Waterman *v*. Vose and al.

HIRAM G. WATERMAN *versus* WALTER S. VOSE AND AL.

Where the jury were instructed that if they should find that, by the description of the note in a notice to the endorsers of its dishonor, that the endorsers might reasonably be presumed to know it referred to the note in suit; they might find the notice to be sufficient; such instructions were held to be correct.

The alteration of a note of hand by the maker after it is endorsed, by adding the words "with interest," is material, and if made without the consent of the endorser he is not liable as such, although the alteration be made before delivery.

Waterman *v.* Vose and al.

This action is assumpsit against the defendants as endorsers of a note of hand, the history of which is fully stated in the opinion.

The verdict was for the plaintiff, and

EXCEPTIONS were taken to the instructions of the court by defendants, DAVIS, J., presiding.

*Aaron Hayden*, counsel for the defendants, in support of the exceptions, argued

1. That the notice being in writing, it was the duty of the court to decide whether it was sufficient, and not leave the question to the jury.

"If it was a point to be settled on inspection of the paper alone, it was more proper that it should have been settled by the presiding judge." Carter v. Bradley, 19 Maine R., 62.

"The endorser stipulating to be responsible *only* on the condition of due presentment and due notice, may insist upon critical proof." Warren v. Gilman, 15 Maine R., 70. And in that case the court held that the judge should have instructed the jury that *seasonable notice had not been given*.

2. The notice was not sufficient, and the judge should so have instructed the jury. "A notice must, by express terms or by natural and *necessary* implication from the language used, contain in substance a true description of the bill, an assertion of due presentment and dishonor of the bill, and that the holder or other person looks to the party to whom the notice is sent for indemnity and reimbursement." Story on Bills, 456. The circumstances of this case furnish the most conclusive argument *against* the sufficiency of the notice.

The note had been altered by adding the words, "*with interest.*" These words are omitted in the notice. How could a jury be allowed to infer that defendants knew they were called upon to pay a note "with interest," when the alteration was made without their knowledge.

In the nature of things they could have no such knowledge. They did not know that there was any note "with

33

interest," in existence with their endorsement on it, and the notice gave them no information on the subject.

3. The alteration was material, and varied the contract of the endorser, and this discharged them.

The adding interest to the bill for the time it had to run, made a difference of $9,23 in the amount, and the alteration is as material as if the $260 had been altered to $269,23, and if it could be altered to that it could be altered to any sum Nash pleased.

A bill of exchange was held void, *even as against acceptors*, by an alteration in the date, although there was a count in the declaration describing it by the right date, and the bill had been demanded on the day when by the original date it was due, as well as on the day it was due by the altered date, and although it was found to have been altered before it came into the hands of the plaintiffs, who were *bona fide* holders, without any other notice than the appearance of the bill gave. Masters v. Miller, 4 Tenn. R., 320.

Our case is much stronger, for here are endorsers—a contingent liability, and the alteration was made by the maker of the note, at the request and with the knowledge of the plaintiff.

Chitty on Con., 608, 4 Am. ed.; Newell v. Maybery, 3 Leigh., 250; Bayley on Bills, 184; Tidmont v. Given, 1 M. and S., 735; 4 Barn. and Ald., 197; Goodman v. Eastman, 4 N. H., 455; Onthwaite v. Jantly, 4 Camp., 179; Hall v. Wallis, 11 Mass., 309; Bank of America v. Wadsworth, 19 John., 391; Hatch v. Hatch, 9 Mass., 307; Gooch v. Bryant, 13 Maine R., 386; Carlton v. Clark, 20 Maine R., 337; Adams v. Frye, 3 Metcalf, 103.

4. It would make no difference that the alteration was made before Nash signed, even if that were the case. Putnam v. Sullivan, 4 Mass., 45.

By writing the note and then endorsing it, the defendants declared the liability they were content to assume, and it cannot be changed without their consent.

It differs entirely from an endorsement of a blank paper,

for that gives an implied authority to fill it up. Here it was already filled up.

5. The fact that plaintiff knew when the alteration was made, and that it was not made in the presence and with the consent of defendant, take from him all claim for consideration as an innocent holder without notice.

The note being filled up and endorsed the presumption was that defendant's contract was expressed therein, and plaintiff had no right to infer authority in Nash to make the alteration. And there being now no proof of such authority, plaintiff is bound by the legal presumption.

Putnam v. Sullivan, 4 Mass., 45, gives the reason why a man may be held by a note written over his blank signature.

There can never be a right to alter the contract of another without his consent, and such alteration, if material, makes it void.

The only question is, who shall suffer, and this depends on notice.

No man has a right to the benefit of an alteration he knew to be wrongly made.

6. The question of fraud does not necessarily arise in the case, and there was no propriety in the court alluding to it. The ground of avoiding an altered contract is that the *contract sued* is not the *contract made.*

As to fraud, the note and the proof of the alteration, without the knowledge of the defendants, should have gone to the jury for them to draw such inferences as would naturally come from these facts. Defendants neither charged direct fraud, nor did they admit there was no fraud; they simply put in the facts, to have such weight as they were legally entitled to.

6. The instructions in relation to defendants' knowledge of the purpose for which the note was to be used, as affecting this case, were wrong.

All the conversation about the oxen was before the note was made, and when the note was written by Vose and de-

livered, he thereby, *in writing*, defined the liability which they were content to assume, *and nobody, without their consent, had a right to change it.*

Besides, it is clear that Vose & Joyce agreed to *endorse* a note to pay for oxen which could be bought on seven months, without interest. Nash must have told them these were the terms, for it is evident he thought so at the time.

Suppose he had raised the price to four or five hundred dollars, or changed the time to three months; could the defendants be holden.

An alteration of the date of a note discharges the endorser unless *proved* to be made with his consent. His offer to renew the note, without proof of his knowledge of the alteration, will not bind him, and such an offer has no tendency to prove such knowledge. Kennedy v. Lancaster Co. Bank, 18 Penn. R., 347.

Simpson v. Stockham, 9 Penn. R., 186; Hacker v. Jamison, 2 Watts and Serg., 438; Hills v. Barnes, 11 N. H., 395, are to the same effect.

The true question is, whether the contract attempted to be enforced in this action is the one defendants made.

*Bion Bradbury,* counsel for the plaintiff.

The first request was properly refused. The demand and notice were proved if the notice sufficiently described the note. The question of identity was properly left to the jury.

2. The second request was given, except upon one point. The court declined to instruct the jury that there was no evidence in the case from which the jury could infer the consent of the defendants to the alteration of the note, but did instruct them that whether such alteration was made, and if so, when made, and whether the defendants consented, the jury might determine from the evidence in the case.

3. The instructions of the presiding judge upon the two last requests was correct.

Waterman *v.* Vose and al.

The alteration of the note made by Nash before the delivery to Waterman, under the circumstances of this case, would not render the note void as to the defendants.

1. The presumption of law is that, if an alteration be made in a note before it is issued, it is made with the consent of the parties to the note. Eddy v. Bond, 19 Maine R., 466; Hall v. Russ, 1 Maine R. 338.

2. From the agency and confidence reposed in Nash by the defendants, the consent of the latter to the alteration is to be inferred. Hall v. Russ, 1 Maine R., 338.

3. The alteration of the note, being made to make it conform to the original intent and terms of the contract between the parties, it is not void.

It is an alteration to correct a mistake, which may always be done.

This alteration is clearly not fraudulent on the part of the holder; striking out those words would leave the liability of defendants, just as they allege it should be.

Nevins v. DeGrand, 15 Mass. R., 436, is an authority to this point. There the court permitted the plaintiffs to restore what they had erased. Parker, C. J., says, "It being clear that the words now moved to be restored were stricken out with honest intentions, and that the acceptor has in no way been prejudiced thereby or can be in any way injured by the restoration, justice requires and the law allows it to be done."

TENNEY, C. J. The note in suit for the accommodation of Amaziah Nash, the maker, was written by Vose, one of the firm of "Vose & Joyce," and signed by him with the name of the firm, without the words "with interest." In pursuance of a previous arrangement between Nash and the plaintiff, it was offered by Nash in payment of a yoke of oxen which he had agreed to purchase of the plaintiff; the latter insisting that the note should be on interest, these words were added by Nash in the presence of the plaintiff without the knowledge or consent of the defendants. Whether Nash

signed the note at the time of its endorsement by the defendants, or afterwards, was a question on which Nash and Vose did not agree; and under the instructions it was not a material question.

It was contended that the description of the note in the written notice of its dishonor, was so defective, the words "with interest" being omitted, that the liability of the endorsers never became fixed. The jury were instructed that if they should find that the defendants, by said notice, might be presumed to know it referred to the note in suit, they might find it to be sufficient. This instruction was correct, on the authority of the case of Smith v. Whitney, 12 Mass., 6, in which a question similar in principle was submitted to the jury.

If this question was for the court instead of the jury, we are satisfied it was correctly settled, and the defendants were not prejudiced.

The jury were instructed, that the addition of the words "with interest," to the note, after it was endorsed by the defendants, was a material alteration. But they were also instructed, substantially, that if the words were added without fraud, and without the knowledge of the defendants, before the note was delivered to the plaintiff, whether the maker signed his name at the time it was endorsed, or at the time the note was delivered, the alteration did not discharge the defendant's liability.

These instructions when applied to an alteration in an accommodation note or bill, made by the consent of the parties to be affected by it, are correct; but not so, when the alteration is not made with the knowledge and consent of such parties. In the case of Master v. Miller, 4 D. and E., 320, it was decided that the alteration of the date of the note avoids it, or a bill of exchange, by which the payment was accelerated, and after acceptance, and so effectually that even an innocent holder for a valuable consideration, cannot support an action upon it.

In 1 Greenl. Ev., sec. 565, it is said, "the grounds of this

doctrine is two-fold. The first is, that of public policy to prevent fraud, by not permitting a man to take the chance of committing a fraud without running the risk of losing by the event, when it is detected. The other is to ensure the identity of the instrument, and prevent the substitution of another, without the privity of the party concerned. The instrument derives its legal virtue from its being the sole repository of the agreement of the parties, solemnly adopted as such, and attested by the signature of the party engaging to perform it."

The law carefully guards the rights of sureties upon an instrument, whether the relation to the principal is shown by his being surety in the technical sense of the term, endorser or otherwise. A promissory note, signed by principal and surety, or a note or bill endorsed for the accommodation of another party thereto, defines the liability intended to be assumed, and any alteration changing this liability without his consent will discharge him; such as the change of the date, the amount, the time or place of payment.

It was held in Miller v. Stewart, 9 Wheat., 680, that the contract of surety is to be construed strictly, and is not to be extended beyond the fair scope of its terms. Judge Story, in delivering the opinion of the court in this case, says, " nothing can be clearer, both upon principle and authority, than the doctrine that the liability of the surety is not to be extended beyond the terms of his contract. To the extent and in the manner, and under the circumstances pointed out in the obligation, he is bound, and no farther. It is not sufficient that he sustain no injury by a change in the contract, or that it may be even for his benefit. He has a right to stand upon the very terms of his contract, and if he does not assent to any variation of it, and a variation is made, it is fatal. This doctrine certainly does not fail to apply to a contract which has been altered materially, after it has passed from the hands of the surety or endorser, though it has not been delivered to the party authorized to treat it as available. After a material alteration, it is not the contract the

party signed, and a negotiation first made after the alteration cannot make it his contract. The distinction in the instructions has no foundation in reason or in law.

When a person puts his name to paper, which is full in form, for a certain sum payable at a certain time and place, for the accommodation of another, who is to become a party to the same, when it shall be negotiated, his liability is limited by the precise terms of that paper. An alteration afterwards, which is material, without his consent, will make it a contract which he never executed, and which it is manifest he never intended to execute, and it is a new contract, to which he can in no sense be treated as a party, and he cannot be bound by it. It bears no analogy to the case where one signs or endorses blank notes or bills, to be filled by the party to be accommodated, according to his discretion and supposed necessities.

In England, under the stamp acts, a note or bill materially altered, even by consent of parties, without a new stamp, is void. And it has been said in English elementary treatises, that "an accommodation bill is not issued so as to be incapable of alteration, until it comes into the hands of one entitled to treat it as an available security." 2 Stark. Ev., 295, note (g.) This note, in the abstract, would seem to support the instructions which we are now considering. But the authority cited by Mr. Starkie will show that the alteration was by the consent of the party attempted to be charged; and the defence, that the contract was void, was upon the ground that every bill shall have a stamp, which was not upon the one in question after the alteration. But the court held that the bill not having become effectual before the alteration, it was not thereby a new contract.

In this case the defendants assumed a liability for the sum of two hundred and sixty dollars, at the end of seven months, and no other. The alteration made the note for a larger sum at the same time. The instructions were not based upon the hypothesis that the alteration was with the consent of the defendants, and were unauthorized in law.

If the court should be of the opinion that the alteration in the note in suit renders it void, it is proposed that the interest thereon should be remitted, so far as it accrued previous to the maturity of the note, and the plaintiff be allowed to strike from the same the added words. It is sufficient for this court, sitting as a Court of Law, to decide the questions of law raised at the trial, to say, that such a motion is not before it, and cannot be entertained. But it may not be improper to remark, that by the authorities referred to, the general proposition is, that written instruments, which are *altered*, in the legal sense of that term, are *thereby made void*, and to allow the note to be placed in the condition in which it was when endorsed, would annul one of the foundations on which the principle rests, to wit, *"public policy,"* to prevent fraud, by not permitting a man to take the chance of committing a fraud, without running any risk of losing by the event, when it is detected.

*Exceptions sustained, verdict set aside,*
*and new trial granted.*