[No. 353.   February 22, 1889.]

## FRANK RUBY, Appellant, v. WILLIAM E. TALBOTT et al., Appellees.

Promissory Note, Alteration of By Mistake—Bill To Restore To its Original Form—Liability of Indorser—Equity.—In a proceeding by bill in equity on a certain negotiable promissory note, executed to another in trust for complainant, against the indorser and makers, to restore the note to its original form, where it was alleged that complainant, dissatisfied with the form of the note, returned it to the firm of which the trustee was a member, directing him to procure another and different form of note, without stating what form; and that, while the note was in the possession of said firm, one of the makers and another altered it, by changing the amount, date, and rate of interest, without the knowledge or consent of complainant, but innocently

and in good faith, supposing they were complying with his wishes,
of which the indorser pretended he had no knowledge, and that by
reason thereof he would be released from all liability to complainant
on said note; that the makers of said note had become nonresidents
and insolvent, so that an action or judgment at law against them
would be unavailing; to which the indorser demurred for want of
equity, which was sustained; and it appeared that the altered note
was in the possession of complainant, and bore in its original form
an unlawful rate of interest—Held: The alteration of the note was
material, and having been made by one of the makers and another,
or one of them, without the consent of the indorser, he was thereby
discharged from all liability thereon, and the demurrer was properly
sustained, dismissing the bill as to such indorser.

APPEAL, from a judgment in favor of the defend-
ant indorser, from the the Second Judicial District
Court, Bernalillo County. Judgment affirmed.

The facts are stated in the opinion of the court.

H. L. WARREN and STONE & STONE for appellant.

Defendant Talbott was a joint maker of the note,
and the defendant Randall was his agent to fill up and
deliver the note. Goodman v. Simonds, 20 How. 462;
Bank v. Neal, Id. 351; Good v. Martin, 95 N. S. 95;
Samson v. Thornton, 37 Am. Dec. 135; Stony v.
Beaubeau, 39 Id. 128.

The alteration having been made innocently and
by mistake, equity has jurisdiction, under the admitted
circumstances, to restore the instrument to its original
form. Chadwick v. Eastman, 53 Me. 16; Lubbering
v. Kohlbrecher, 22 Mo. 596; Vogel v. Ripper, 34 Ill.
106; Langenberger v. Kreiger, 48 Cal. 147; Bucklen
v. Huff, 53 Ind. 474; Union N. B. v. Roberts, 45 Wis.
373.

If Borrodaile and Randall are held to have acted
for appellant, and not as strangers, then the bill shows
that they were acting under a mistake, and without
fraudulent purpose; and appellant, as an innocent
party, is entitled in equity to the correction, which

can not impose any burden upon Talbott other than that which he confessedly assumed by signing the note, upon faith of which appellant advanced the money. 1 Story Eq. Jur., sec. 138; Bank v. Emerson, 10 Paige, 359; Evarts v. Strode, 11 Ohio, 480; Naughten v. Partridge, Id. 223; Larkins v. Biddle, 21 Ala. 252; State v. Paup, 8 Eng. (Ark.) 129; Newell v. Stiles, 21 Ga. 118.

Equity has jurisdiction to correct a mistake of law as well as of fact, which a court of law has not, and hence there is no adequate remedy at law.

NEILL B. FIELD for appellee.

The bill alleges that the alteration of the note was made by one of the makers and the agent of the appellant. It operates then to discharge the appellee from his liability on the note. Wood v. Stubb, 6 Wall. 80; Draper v. Wood, 112 Mass. 315; S. C., 17 Am. Rep. 92, and note.

When the appellee becomes thus discharged a court of equity has no jurisdiction to revive his liability. Burk v. Murphy, 27 Miss. 168.

A court of equity can not break through or override the law. Snell's Prin. Eq., 18

Equity will not relieve against any defect, imperfection, or abuse of the law, but only against the unconscionable claims and abuses of the parties. Smith's Man. Eq., pp. 2, 3, and note.

Courts of equity compel parties to execute their agreements, but have no power to make agreements for them. Hunt v. Rousomaniere, 1 Pet. 1.

A mistake arising from ignorance of the law is not ground for reforming an instrument. Id.

REEVES, J.—On the twenty-sixth day of September, 1885, Frank Ruby brought his bill of complaint against William E. Talbott, and John William Randall

and Teresa M. Randall, defendants. The bill alleges that the complainant loaned to John William Randall the sum of $1,500, and in consideration of the loan, and as evidence of the indebtedness, the defendant executed and delivered to one Mariano Armijo, in trust for the complainant his promissory note hereinafter described. Prior to the execution and delivery of the note the defendant William E. Talbott, indorsed his signature and name upon the back of the note, and delivered the same in blank to the defendant, John William Randall, and afterward the same was signed by said Randall, and by Teresa Randall, also one of the defendants, and delivered to one Mariano Armijo, in trust for the complainant. When the note was delivered to Mariano Armijo, the same was in words and figures as follows, to wit:

"$1,500.        ALBUQUERQUE, N. M., April 17, 1883.

"One year after date, we promise to pay to the order of Mariano Armijo, in trust for Frank Ruby, fifteen hundred no hundredths dollars, at the Central Bank here, at eighteen per cent per annum from date, value received.

"JOHN WILLIAM RANDALL.
"TERESA M. RANDALL."

On the same day the note was indorsed by Mariano Armijo as follows:

"Pay to Frank Ruby or order.

"MARIANO ARMIJO."

The note was then transmitted by Mariano Armijo to and received by the complainant. The complainant stated that at the time he received the note he was absent from the territory of New Mexico, and that after receiving the same, being dissatisfied with the form thereof, and being desirous of obtaining from the makers, William E. Talbott, John William Randall, and Teresa M. Randall, another and different note as evidence of said indebtedness, instead and in lieu of the

note above set forth, for that purpose he sent and transmitted the note to the partnership firm of Armijo Bros. & Borrodaile, doing business in Bernalillo county, and composed of Mariano Armijo and others, and requested and directed them to procure and obtain the execution and delivery of a different note, as before mentioned. The complainant states, on information and belief, that Armijo Bros. & Borrodaile neglected to obtain any other or different note in lieu of the above mentioned note, and that the said John William Randall and John Borrodaile, while the note was in the possession of the firm, changed and altered it without the knowledge or consent of complainant, in such manner that the same became and was in form, words, and figures following, to wit:

"$1,590. 00-100.

"Albuquerque, N. M., April 27, 1883.

"One year after date we promise to pay to the order of Mariano Armijo, in trust for Frank Ruby, fifteen hundred and ninety no hundredths dollars, at the Central Bank here, at twelve per cent per annum from date, value received.

"John William Randall,
"Teresa M. Randall."

And signed upon the back as hereinbefore stated.

The complainant further stated that the alteration was so made, without any authority or direction from him, by Randall and Borrodaile, or one of them, in good faith, inadvertently and innocently, for the purpose and with the intent on their part to execute and carry out the wishes and direction of the complainant in regard to the procurement of another and different note, and in lieu or instead of the first mentioned note, and by mistake and inadvertence on their part, and in the mistaken belief that by the means of such alteration the wishes and directions of complainant could and would be as well, effectually, and legally accomplished and executed as by the execution by the makers of an-

other and different note in lieu thereof, and without
any fraudulent or wrongful intent on their part, or
that of complainant, or of any other person; that Tal-
bott pretends and gives out that the alteration was
made without his knowledge or consent, and that by
reason thereof he became, was, and is released and dis-
charged from all liability to complainant by reason of
the note and loan; alleges that John William Randall
and Teresa M. Randall have become and now are non-
residents of this territory, and insolvent, so that an
action or judgment at law against them would be use-
less and unavailing; and that, unless the note be
restored to its original proper form, complainant will
sustain irreparable injury; and prays that this may be
done, and for further relief in the premises as equity
may require. All the defendants entered their ap-
pearance.

The defendant Talbott demurred to the bill for
want of equity, the court sustained the demurrer, and,
the complainant refusing to plead further, the court dis-
missed the bill as to the defendant Talbott, at the com-
plainant's costs, and the complainant brings the case
into this court by appeal, and assigns as errors:
"(1) The district court erred in sustaining the demurrer
of appellee William E. Talbott, one of the defendants
below, to the the amended bill of complaint of appel-
lant, the complainant below, and in dismissing said bill,
for the reason that the same is sufficient in form and
substance to entitle said complainant to the relief therein
prayed. And said complainant prays that the judg-
ment aforesaid may be reversed and annulled, and that
he may be restored to all things which he has lost by
occasion of said judgment."

Counsel for appellant relies upon the following
propositions as grounds for the reversal of the judg-
ment in this case: (1) Defendant Talbott was a joint
maker of the note, and defendant Randall was his

agent to fill up and deliver the same.    (2) The alteration having been innocently and mistakenly made, under the admitted circumstances, equity has jurisdiction to restore the instrument to its proper form. (3) If Borrodaile and Randall held to have acted for appellants and not as strangers, then the bill shows that they were acting under mistake, and without fraudulent purpose, and appellant, as an innocent party, is entitled in equity to the correction, which can not impose any burden upon Talbott different from that which he confessedly assumed by signing the note upon the faith of which appellant advanced the money. Equity has jurisdiction to correct a mistake of law as well as of fact, which a court of law has not.

1. The authorities cited under the first proposition present the case of a blank indorsement by a third party, made before the instrument is indorsed by the payee, and before it is delivered; the question being whether the party is to be deemed an original promisor, guarantor, or indorser.    This question was fully examined by the supreme court of the United States in the case of Good v. Martin, 95 U. S. 90.    It is not necessary to give this question a separate consideration in the present case, as the rights and liabilities of the parties will be shown in the examination of the other propositions.

2. In Lubbering v. Kohlbrecher, 22 Mo. 596, the court held that, "where material alteration is made in a promissory note by one unauthorized by and without the knowledge or consent of the owner of such note, the note is not thereby avoided as against such owner." The words "with interest from date," were added to the note after its execution.    In Evants v. Adm'r and Heirs of Strode, 11 Ohio R. (Stanton) 480, the court said: "Where an instrument, by a mistake of the

PROMISSORY note: alteration by mistake: liability of indorser: bill of reform.

parties as to the legal effect of the terms used, fails
to carry out their intention, relief may be afforded in
equity;" and that "a mistake of law may be corrected
in equity." In Langenberger v. Kreiger, 48 Cal. 147,
the court held: "If a person without authority to do
so, and who is not the agent for the payee for that pur-
pose, writes across the face of a draft payable generally
in money the words 'payable in United States gold
coin,' it is not such an alteration of the draft as vitiates
it." So, in the case of Bank v. Emerson, 10 Paige,
359, it was held that "the court of chancery is author-
ized to correct the errors and to supply the omissions
of its registers, clerks, and other officers, when it can
be done without detriment to the rights of third persons,
and where substantial justice requires it to be done."
These citations will suffice, as presenting the views of
counsel for the appellant on his side of the case.

Counsel for Talbott, the appellee, contends that as
the alteration of the note was made by one of the
makers and the agent of the appellant, without the
knowledge or consent of the appellee, it operated to
discharge him from liability on the note. Authorities
are cited by counsel in support of the proposition. The
case of Wood v. Steele, 6 Wall. 80, was an action upon
a promissory note made by Steele and Newson, bearing
date October 11, 1858, payable to their own order, one
year from date, and indorsed by them to Wood, the
plaintiff. It appeared on the face of the note that
"September" had been stricken out, and "October
11th" substituted as the date. The circuit court in-
structed the jury "that, if the said alteration was made
after the note was signed by the defendant, Steele, and
by him delivered to the other maker, Newson, Steele
was discharged from all liability on said note." The
jury found for the defendant, and the plaintiff prose-
cuted a writ of error to reverse the judgment to the
supreme court of the United States. The court said:

"It was a rule of the common law, as far back as the reign of Edward III, that a rasure in the deed avoids it. The effect of alterations in deeds was considered in Pigot's case, and most of the authorities upon the subject down to that time were referred to. In Master v. Miller, the subject was elaborately examined with reference to commercial paper. It was held that the established rules apply to that class of securities as well as to deeds. It is now settled in both English and American jurisprudence that a material alteration in any commercial paper, without the consent of the party sought to be charged, extinguishes his liability. * * * The alteration of the date, whether it hasten or delay the time of payment, has been uniformly held to be material. The fact in this case that the alteration was made before the note passed from the hands of Newson, can not affect the result. He had no authority to change the date. The grounds of the discharge in such cases are obvious. The agreement is no longer the one into which the defendant entered. Its identity is changed. Another is substituted without his consent, and by a party who had no authority to consent for him. There is no longer the necessary concurrence of minds. * * * To prevent and punish such tampering, the law does not permit the plaintiff to fall back upon the contract as it was originally. In pursuance of a stern but wise policy, it annuls the instrument as to the party sought to be wronged. * * * The rule, that where one of two innocent persons must suffer, he who has put it in the power of another to do the wrong must suffer the loss. * * * The defendant could no more have prevented the alteration than he could have prevented a complete fabrication, and he had as little reason to anticipate one as the other. The law regards the security after it is altered as an entire forgery with respect to the parties who have not consented, and, so far as they are concerned, deals with it accordingly,"

—referring to the following cases: Goodman v. East-
man, 4 N. H. 456; Waterman v. Vose, 43 Me. 504;
Outhwaite v. Luntley, 4 Camp. 180; United States v.
Boone, 391; Mitchell v. Ringgold, 3 Har. & J. 159;
Stephens v. Graham, 1 Serg. & R. 509; Miller v. Gille-
land, 19 Pa. St. 119; Heffner v. Wenrich, 32 Pa. St. 423;
Stout v. Cloud, 5 Litt. 207; Lisle v. Rogers, 18 B. Mon.
529. Story, in his Equity Jurisprudence (volume 1, sec.
138), says: "It is a matter of regret that, in the present
state of the law, it is not practicable to present in any
more definite form the doctrine respecting the effect of
mistakes of law, or to clear the subject from some ob-
scurities and uncertainties which still surround it. But
it may be safely affirmed upon the highest authority, as
well as established doctrine, that a mere naked mistake
of law, unattended with any special circumstances as
have been above suggested, will furnish no ground for
the interposition of a court of equity; and the present
disposition of courts of equity is to narrow, rather than
to enlarge, the operation of exceptions." Id., secs. 110,
111; Story Cont., sec. 407.

Though it may be difficult to reconcile these con-
flicting decisions, it is believed, on the weight of au-
thority, that the alteration of the note was material;
and being done by one of the makers and by John
Borrodaile, or one of them, without the consent of
Talbott, he was thereby discharged from liability on
the note. It is not alleged in the petition why Ruby
was dissatisfied with the original note, except as to its
form, nor what was the form he desired, only that it
should be another and different note from the makers,
Talbott and John William Randall and Teresa
Randall, as evidence of the debt. Ruby appears to be
in possession of the altered note, which he asks may
be restored to its original form, and which bore an un-
lawful and usurious rate of interest. The sum for
which the note was given and its date and the rate of

interest, were altered, and a different sum and date and rate of interest substituted. It would be a useless proceeding to restore the note to its original form, unless it was intended that Talbott should be liable as indorser or one of the makers. The demurrer was properly sustained, and the bill of complaint dismissed as to Talbott. Judgment affirmed.

HENDERSON, J., concurs.

LONG, C. J.—With due deference and respect to the opinion of the majority of the court, I prefer to place the affirmance of the judgment below on the grounds herein stated, and am not willing to hold that the alterations of the note complained of in the bill avoided it entirely. The right of the holder of a contract, erased and interlined without his authority or consent, to enforce such instrument, is an important one, and I am not willing to hold a principle which might deprive the holder of such paper from enforcing it. The complainant's bill tersely states the theory of his case, and is as follows:

"Your orator, Frank Ruby, a citizen and resident of the State of Colorado, brings this, his bill of complaint, against William E. Talbott, a citizen and resident of the county of Bernalillo and territory of New Mexico, and John William Randall and Teresa M. Randall, citizens and residents of the state of New York, defendants herein, and thereupon your orator complains and says: That heretofore, to wit, on the 17th day of April, A. D. 1883, at said county of Bernalillo, at the request of said defendants herein, your orator loaned to John William Randall the sum of fifteen hundred dollars in lawful money of the United States, and in consideration thereof the said defendants, as evidence of said indebtedness, made, executed, and delivered to one Mariano Armijo, in trust for your orator, their certain promissory note hereinafter specially mentioned and

described. Your orator states that, prior to the execution and delivery of said note, the defendant William E. Talbott, by the name and signature of W. E. Talbott, wrote and indorsed his signature and name upon the back of said note, and delivered the same in blank to the defendant John William Randall, and that thereafter the same was, by and under the direction of said John William Randall, subscribed and signed by the said John William Randall, and Teresa M. Randall, and afterward, to wit, on the same day, was delivered to one Mariano Armijo in trust for your orator. That when the said note was so delivered to Mariano Armijo in trust for your orator, as aforesaid, the same was in words and figures as follows, to wit:
" '$1,500.00.

" 'ALBUQUERQUE, N. M., April 17, 1883.

" 'One year after date we promise to pay to the order of Mariano Armijo, in trust for Frank Ruby, fifteen hundred no hundredths dollars, at the Central Bank here, at eighteen per cent per annum from date, value received.

" 'JOHN WILLIAM RANDALL.
" 'TERESA M. RANDALL.'

"And that thereafter, to wit, on the same day, the said note was indorsed by the said Mariano Armijo, as follows:

" 'Pay to Frank Ruby or order.
" '[Signed]        MARIANO ARMIJO.'

"And the same was then by the said Mariano Armijo transmitted to and received by your orator. Your orator states that at the time said note was so received by him he was absent from said territory of New Mexico, and that after receiving the same, being dissatisfied with the form thereof, and being desirous of obtaining from the said makers, William E. Talbott, John William Randall, and Teresa M. Randall, another and different note, as evidence of said indebtedness,

instead and in lieu of the said note above set forth, for that purpose sent and transmitted said note to the partnership firm doing business under the name and style of 'Armijo Bros. & Borrodaile,' at said county of Bernalillo, and composed of Mariano Armijo, Elias Armijo, and John Borrodaile, and requested and directed them to procure and obtain the execution and delivery of such other and different note before mentioned and as evidence of said loan hereinbefore mentioned.

"Your orator further states that he is informed and believes that the said Armijo Bros. & Borrodaile neglected and failed to obtain the execution and delivery of any other or different note to your orator in lieu of said above mentioned note, and that the said John William Randall and John Borrodaile, while said note was so in possession of said firm, Armijo Bros. & Borrodaile, for the purpose aforesaid, changed and altered the said note, without the knowledge or consent of your orator, in such manner that the same became and was in form, words, and figures following, to wit:

" '$1,590.00-100.

" 'ALBUQUERQUE, N. M., April 27, 1883.

" 'One year after date we promise to pay to the order of Mariano Armijo, in trust for Frank Ruby, fifteen hundred and ninety no hundredths dollars, at the Central Bank here, at twelve per cent per annum from date, value received.

" 'JOHN WILLIAM RANDALL.
" 'TERESA M. RANDALL.'

"And signed upon the back thereof as hereinbefore stated.

"Your orator further states that the said alteration was so made without any authority or direction from your orator by the said Randall and Borrodaile, or one of them, in good faith, inadvertently and innocently,

for the purpose and with the intent on their part to effectuate and carry out the wishes and direction of your orator in regard to the procurement of another and different note in lieu and instead of said note as first hereinbefore set forth; and by mistake and inadvertence on their part, and in the mistaken belief that by means of such alterations the wishes and directions aforesaid of your orator could and would be as well, effectually; and legally accomplished and executed as by the execution by said makers of another and different note in lieu thereof, and without any fraudulent or wrongful intent on their part or that of your orator, or of any other person. But your orator states that said Talbott pretends and gives out that said alteration was made without his knowledge or consent, and that by reason thereof he became, was, and is released and discharged from all liability to your orator by reason of said note or said loan hereinbefore mentioned. Your orator is advised by counsel and believes that on account and by reason of said alteration he is, by the strict rules of the common law, barred and deprived of the right of recovery against said Talbott upon said note in its said altered form, and your orator is informed and believes, and so states, that since the alteration of the said note, and since the same became due and payable according to the terms thereof, the said John William Randall and Teresa M. Randall have become and are now nonresidents of this territory, and wholly insolvent, so that an action or judgment at law against them, or either of them, would be wholly useless and unavailing, and that, unless said note be restored to its original and proper form, your orator will sustain irreparable injury. Forasmuch, therefore, as your orator is without remedy in the premises, except in a court of equity, and to the end that the said William E. Talbott, John William Randall, and Teresa M. Randall, who are made parties defendant to this bill,

may be required to make full, true, and perfect answer to the same, but not under oath (the answer under oath being hereby expressly waived), and that the said promissory note may be restored by the said defendants to the original and proper form thereof, before the same was altered as aforesaid, or in default of such restoration by them by the master in chancery of this court, or in some other manner under the direction of this court, and that your orator may have such other and further relief in the premises as equity may require and to your honor shall seem meet."

To this bill a demurrer was sustained by the court below, and that action is complained of here.

It will be observed this is not an action at law to recover on the note either on its original or in its new form after the change, but is an appeal to the equity jurisdiction of the court, under the particular facts pleaded, to restore the note by decree to its original form; the bill shows a very strong case for relief in some way. The alteration complainant did not authorize, nor does it anywhere appear that he ratified or approved or consented to the act whereby the form of the note in substantial particulars was changed, nor was he in any way negligent, nor did he impose any hardship upon the accommodation maker, Talbott; yet it is contended, by the operation of some rule of law, that he can not recover on the note as originally made, or as altered, and that equity will not decree a restoration. If so, complainant is made the victim of an act done without his authority or consent, never approved or ratified by him, and which he was powerless to prevent. I do not believe the law imposes such a hardship on an innocent person. To do so would be to punish when there is no offense; to inflict a penalty where there is no wrong. The original transaction, as appears by the averments in the bill, was this: Mariano Armijo was the trustee of Ruby. The Randalls pro-

cured from Ruby a loan of $1,500, on the faith of their signature to the note as originally made, and the signature as an accommodation maker of Talbott, who may in some sense be called a "surety." The name of Talbott on the paper was probably the inducement for Ruby to part with his $1,500. When the note was executed and delivered to Armijo, and the money paid to the Randalls, the transaction was completed and the legal liability of Talbott fixed. The promise being made to Armijo, in trust for Ruby, no assignment to him was necessary. The position of the appellee is that, without payment by the maker, in the absence of negligence on the part of Ruby, the holder, with no fraud or improper or wrongful act imputed to him, yet the maker is discharged of liability, and all remedy for Ruby is gone. The position is that he can not recover on the note in its new form, because it is not the note of Talbott; that he can not recover on it in the original form, because the unauthorized interlineation in the the note, and addition thereto, has destroyed its validity, and that equity is powerless to relieve. If that is a correct position, then there may be a wrong and no remedy. I do not believe an honest obligation to pay money can be discharged or wiped out in that way; but, to the contrary, hold that the complainant Ruby has an ample legal remedy, by an action at law on the note in its original form, with averments like those in the bill of complaint, showing that the interlineations and changes were made without the holder's consent or authority or knowledge. Proof of such averments would relieve the holder of all responsibility for the altertion, and require the court to disregard them. The averments of the bill are clearly to the effect that Armijo Bros. & Borrodaile were by Ruby created his particular agents to do one single act, and not his general agents. On this point the bill avers: "Your orator states that at the time said note was received by

him he was absent from the territory of New Mexico, and after receiving the same, being dissatisfied with the form thereof, and being desirous of obtaining from the makers, Wm. E. Talbott, John W. Randall, and Teresa M. Randall, another and different note as evidence of said indebtedness, instead and in lieu of the note above set forth, for that purpose sent and transmitted said note to the partnership firm doing business under the name and style of 'Armijo Bros. & Borrodaile,' at said county of Bernalillo,  *  *  *  and requested and directed them to procure and obtain the execution and delivery of such other and different note, before mentioned, and as evidence of said loan before mentioned."

A general agent is one authorized to transact all his principal's business, or all of his business of some particular kind. A particular agent is one authorized to do one or two particular things.  *  *  *  "If a particular or special agent exceeds his authority, the principal is not bound." 1 Pars. Cont. 40. The averments just quoted from the bill show clearly that Ruby created the firm as his special agent only to take a new note and thereupon surrender the old one. The firm was not constituted his general agent to erase, interline, add to, or alter the old note. On the contrary, the authority was carefully guarded and expressly limited to the taking of a new note in lieu of the old one. The firm exceeded its authority, and, instead of requiring a new note, as its instructions provided, went outside of its authority, and, without either the knowledge or consent of Ruby, changed by alteration the old note in important particulars, as will be seen by the bill. This act, outside of the authority of the agent, should not bind Ruby, while he repudiates the act. The question here is between the holder and Talbott, the original accommodation maker, it being averred in the bill that the Randalls are both non-residents of the territory, and also insolvent. If it be

held that this unauthorized act does not discharge
Talbott, such a holding does not enlarge his liability,
but only compels him to perform his original promise.
There is nothing in the case in the nature of an estop-
pel, as Ruby has done nothing apparent from the aver-
ments to work an estoppel. The original note should
not be avoided against Ruby as a penalty for tamper-
ing with it, because the averments show he has not
done so. Talbott, by the act complained of, can in no
way be made to pay more than he agreed. The case
of Wood v. Steele, 6 Wall. 81, is not conclusive of this
one. In that case the alteration in the instrument was
by one of the makers, and before its delivery to the
payee, and the action was not on the original note,
but on the instrument in its changed form. The court
properly held the new note was not the note the surety
signed, and he was, therefore, not liable. Of course,
as to him, the new note was a forgery, because he
never signed it, and the alteration made it in effect a
new note. What the court say in that case about the
effect of the alteration in the note as originally signed
is entirely outside the issue then before the court, and
may properly be regarded as obiter dictum, and not
binding on this court.

In Lübbering v. Kohlbrecher, 22 Mo. 596, the
effect of an unauthorized alteration in a note was
passed upon. That case was a suit on a note for $100.
The defendants proved that the words "with interest
from date" were added to the note after its execution.
The court below in that case declared the law to be as
follows: "First. The plaintiff is not affected by any
alteration or erasure or spoliation made on the note sued
on, unless the same was done by her or by her knowl-
edge or consent. Second. An agent has no implied
authority to do an unlawful act, so as to bind his prin-
cipal, unless such act is done by the knowledge or
consent of the principal." The supreme court hold

the law as declared to be correct, and say: "In this case the addition of the words and the subsequent erasure of them was not brought home to the plaintiff. She is not bound by the illegal and unauthorized conduct of those who were her agents, nor should she be affected by any act wrong in law, and not within the scope of the agent's authority or business, unless the act be sanctioned, or subsequently affirmed, by her."

In U. S. v. Spalding, 2 Mason, 478, Justice STORY very strongly condemned the old doctrine, that every material alteration of a deed, even by a stranger, and without privity of either party, avoided the deed. He considered the old •rule as repugnant to common sense and justice, as inflicting on an innocent party all the losses occasioned by mistake, by accident, or the wrongful acts of others.

To the same effect is Langenberger v. Kreiger, 48 Cal. 148. In that case the defendant, residing at Anaheim, made and delivered to one Smith, for the plaintiffs, a draft on Leopold Kahn of San Francisco, for $622, payable to the order of the plaintiffs, but specified no particular kind of money in which it was to be paid. On receiving the draft, Smith, without the authority of the defendant, and, so far as the evidence shows, without the knowledge or authority of the plaintiffs, wrote across it, in red ink, the words, "payable in United States gold coin." Notwithstanding this alteration, a judgment was rendered on the draft, which was upheld in the supreme court. The court say: "There was no evidence as to the nature or extent of Smith's agency, and, in the absence of all proof on that point, it can not be inferred that Smith was acting in the scope of his agency in writing these words across the draft, and the plaintiffs are not bound by or responsible for his unauthorized act, unless they subsequently adopted and ratified it with knowledge of the facts. *  *  * It was, therefore, the unau-

thorized act of a stranger having no interest in the transaction, and did not vitiate the draft."

That case is in point. The firm of Armijo Bros. & Borrodaile stood in the same relation to the note that Smith did to the draft. Each was a holder of the paper for a particular purpose, as the agent of its owner, and neither had right to add to or take from the paper. Each acted outside of authority, and if in the California case the holder of the draft should not in law be defeated of his right by the unauthorized act of an agent, in this case the plaintiff should, in an action at law on the original note, have relief against the unauthorized act of his agent; especially where it would not make the indorser's liability greater by a single nickel than that which he originally assumed. "A distinction is to be observed between the alteration and the spoliation of an instrument as to the legal consequences. An alteration is an act done upon the instrument by which its meaning or language is changed. The term is, at this day, usually applied to the act of the party entitled under the deed or instrument, and imports some fraud or improper design on his part to change its effect. But the act of a stranger, without the participation of the party interested, is a mere spoliation, not changing its legal operation, so long as the original writing remains legible. If, by the unlawful act of a stranger, the instrument is mutilated or defaced, so that its identity is gone, the law regards the act, so far as the rights of the parties to the instrument are concerned, merely as an accidental destruction of primary evidence." 1 Greenl. Ev., sec. 566. In Union and Nat'l Bank v. Roberts, 45 Wis. 377, it is held, where one made an alteration in a note not having authority to do so, that as to such act he was a mere trespasser, and the note was not thereby to be held void. "When the spoliation be done by an agent of one of the parties, it will not avoid the contract, if the agent had no express or implied authority

to do it." Am. and Eng. Cyclopedia of Law, 505.
To support the text the author cites the following
authorities. Brent v. Eoff, 35 Barb. (N. Y.) 50; Collins
v. Makepeace, 13 Ind. 448; Hunt v. Gray, 35 N. J.
Law, 227, 10 Am. Rep. 232; Bigelow v. Stilphen, 35
Vt. 521, 67 Am. Dec. 459. "An alteration, when
made by a stranger to a contract, can not invalidate
it." 1 Am. and Eng. Cyclopedia of Law, 505.

Mr. Parsons, in his work on Contracts (volume 2,
p. 716, note m), fully discusses the effect of an altera-
tion upon written instruments. He says: "In this
country it is clearly settled that a material alteration
by a stranger will not render an instrument void, if it
can be shown by evidence what the instrument was
before it was altered." The following authorities are
cited by the learned author, whose accuracy of state-
ment as to the result of decided cases is always received
as correct, in support of his views. Nichols v. Johnson,
10 Conn. 192; Rees v. Overbaugh, 6 Cow. 746; Lewis
v. Payn, 8 Cow. 71; Medlin v. Platte Co., 8 Mo. 235;
Davis v. Carlisle, 6 Ala. 707; Waring v. Smyth, 2
Barb. Ch. 119; Smith v. McGowan, 3 Barb. 404;
Jackson v. Malin, 15 Johns. 293; City of Boston v.
Benson, 12 Cush. 61; Worrall v. Green, 39 Pa. St.
388. "If the alteration be not fraudulent, although it
cancels the instrument, it will not cancel the debt of
which the instrument is evidence." 2 Pars. Cont.
720; Vogle v. Ripper, 34 Ill. 100.

In Hunt v. Gray, 35 N. J. Law, 227, also quoted
in 10 Am. Rep. 232, in addition to the discussion of
that question in the opinion, the following authorities
are cited in a note, in support of the doctrine "that
the alteration of an instrument by a stranger to it will
not avoid the instrument:" Ford v. Ford, 17 Pick.
418; Piersol v. Grimes, 30 Ind. 129; Crockett v.
Thomason, 5 Sneed, 342; Fulmer v. Seitz, 9 Am. Rep.
172, and notes. It has been impossible to examine

the authorities thus cited by the note to the New Jersey case, to verify the correctness of the citation, but they are given here in the belief that they will be found to support the principle to which they are cited.

Hunt v. Gray, supra, contains to my mind such a forcible and irresistible argument in support of the position that a liability exists at law on the original note in this case described, that full extracts from the opinion of that court are here given. The facts of that case, as disclosed by the record, are these: The suit was upon a note of which the defendant was maker, one John E. Hunt being the payee. The consideration of the note was a horse sold and delivered. This horse was the property of George Hunt, the plaintiff, for whom said John E. Hunt was acting as agent in the sale of the horse. This agency was not disclosed to defendant. Upon receipt of the note the agent showed it to his principal, the plaintiff, and took it to the bank to have it discounted for his use. The bank refused to cash the note, as it was drawn without "defalcation" merely. The agent, without knowledge of the plaintiff, thereupon inserted into the note the words "or discount." The bank then took the note, and the proceeds passed to the plaintiff. The note not being paid at maturity, the plaintiff took it up, and brought suit upon it in the action then before the supreme court. That court say: "The alteration was a material one, and it is alleged it was made by the agent of the plaintiff. The question, then, is presented as to the effect of such an alteration of a written contract. I have no doubt any legal instrument is, as a means of evidence, annulled by such an act. This is the doctrine as extracted from Year Books, expounded in Pigot's Case, 11 Rep. 27. The law, as resolved in this celebrated decision, was that when any deed is altered in a point material by the plaintiff himself, or by any stranger without the privity of the obligee, be

it by interlineation, addition, raising, or by drawing a
pen through a line, or through the midst of any ma-
terial word, that the deed thereby becomes void; and
in the recent case of Davidson v. Cooper, 11 Mees. &
W. 778; s. c., 13 Mees. & W. 343, Lord Abinger, in
delivering the judgment of the court of exchequer,
said: 'There is no doubt but that, in case of a deed,
any material alteration, whether made by a party
holding it, or by a stranger, renders the instrument
altogether void from the time when such alteration is
made.' In Master v. Miller, 4 Term R. 320, this
doctrine was held to be applicable to promissory notes
and all written contracts. To the extent that a legal
instrument will be avoided by an alteration made,
either directly or indirectly, by the party claiming an
interest under it, this doctrine has been repeatedly
recognized by this court, and as a principle in our
legal system is not to be questioned. *   *   *

"The reasons for this rule are obvious, and of the
most solid character. In its absence, the inducement
to fraud would be strong, and public policy requires,
in the language of Lord Kenyon: 'No man shall be per-
mitted to take the chances of committing a fraud with-
out running any risk of losing by the event that it is
detected.' *   *   * If the instrument has been altered
by the mistake of the party holding it, relief must be
sought in a court of equity. Within this limit, I do not
find that the legal principle has been seriously called in
question. *   *   * The alteration of the note in this
case destroyed it, if such alteration, in legal intendment,
is to be ascribed to the plaintiff. But here, I think, in-
tervenes one of the infirmities of the defense. The al-
teration of this note was not the act of the plaintiff,
because the person who made it was not his agent for
that purpose. These were the facts: John E. Hunt
was the agent who sold the plaintiff's horse for time.
In that transaction he took the note in dispute, and
carried it to the plaintiff. He then took it to the bank.

and had it discounted, the proceeds going to the plaintiff. From these circumstances an authority to alter this note can not be inferred. It could not have been within the contemplation of either the principal or the agent at the time of the creation of the agency. Consequently the act must be regarded as done by a stranger, without the concurrence, express or implied, of the plaintiff. The question is, will an alteration made by a stranger vitiate the note? It will be observed that the rule as stated by Lord COKE in the case cited from his reports, answers this inquiry in the affirmative, and that seems to be, after some fluctuation of sentiment, the present prevailing opinion in the English courts. But the doctrine rests, I think, rather on ancient dicta than on actual ancient decisions, and the American rule, and with much better reason, appears to be entirely the other way. Prof. Parsons treats the rule as completely settled in this country that a material alteration by a stranger will not render an instrument void, if it can be shown by evidence what the language was as it originally stood. 2 Pars. Cont. 233, note 9, where the cases on the subject will be found collected. As the common law, in its ancient form can not be said to have been so settled on this point as to be imperative on this court, we are at liberty to follow either the modern English or American rule, and I have already said the latter seems preferable. The only ground I have found suggested in support of the new stringent rule is this: that a paper can not be altered by a stranger without laches on the part of the holder of it. But this is an assumption which has no foundation in fact. A man is not always remiss who trusts his paper with another. Many of them, every one knows, must be constantly passing from hand to hand. Under such circumstances, the imputation of laches is utterly misplaced. Nor does there appear any necessity, arising from considerations of public policy,

for the enforcement of so severe a rule. Strangers having no interest in an instrument are under no great temptation to corrupt it, and it is therefore an evil which will not often occur, while the injustice of concealing a written contract, without fault in the party holding it, is so flagrant that it should require the strongest reasons for the law to imply it. Adopting, then, the rule recognized by the courts in this country, and applying it to this case, the result is that this verdict founded on the note in question must stand, as the note was not altered by the plaintiff, nor with his consent, and as the act of a stranger could not deprive it of its legal force.''

The case which has been so fully quoted is to my mind absolutely conclusive on the rights of the plaintiff, Frank Ruby, in this case. It is pertinent to inquire, what has Ruby done that his right of action on the original note should be taken from him? Wood v. Steele, 6 Wall. 80, was an action on a note which had been changed without the consent of the surety in its changed and new form. As so changed without surety's consent, it was not, as sued upon, his promise, and of course recovery thereon could not be had at law. So here, if Talbott is sued on the note as changed in its new form, if he did not consent to it, was no party to it, it would not in such form be his promise, and he would defeat a recovery; so he has not been injured. Shall it be said this orignal note in the case under consideration must be treated as destroyed, satisfied, as having no force or effect in law or equity, to prevent other persons from changing other notes, as a matter of public policy? If so, the answer is clear. The establishment of such a rule will rather encourage the destruction of written instruments by interlineation or erasure than the contrary. Such a principle would stand as a constant inducement to such changes. Persons would be thereby tempted surreptitiously in many

ways to procure the alteration of the paper as the easiest
mode of discharge therefrom.   Was the plaintiff negli-
gent, because, being absent, he intrusted the original
note to an agent, to surrender it, and to receive a new
note in its place?   The employment of agents and at-
torneys to take, renew, negotiate, and collect notes is
one of the most common affairs of business.   I am not
willing to establish the principle in this territory, that
one who intrusts a note with another, to be collected,
negotiated, delivered up on receipt of a new and satis-
factory obligation, shall lose all remedy if the agent,
either by mistake or of his wrong, exceeds his author-
ity, and without the owner's knowledge or consent or
ratification interlines or erases the paper, so as to ma-
terially change it.   The rule, in my judgment, is that
the holder may be made to lose his right if he himself
alters the note, or procures it to be done, or in any way
authorizes the act, but not if it is without his knowledge
or authority.   In Angle v. Northwestern Life Insur-
ance Co., 92 U. S. 556, Mr. Justice CLIFFORD, in deliv-
ering the opinion of the court, said: "Persons dealing
with an agent are entitled to the same protection as if
dealing with the principal, to the extent that the agent
acts within the scope of his authority.   Pursuant to
that settled rule of law, it is settled that where a party
to a negotiable instrument intrusts it to another for use
as such, with blanks not filled up, such instrument so
delivered carries on its face an implied authority to
complete the same by filling the blanks, * * * but
he may not make a new instrument by erasing what is
written or printed, nor by filling the blanks with a stip-
ulation repugnant to the plainly expressed intention of
the same, as shown by its printed terms."   It seems to
me, if the act is wrongful, outside of authority, it
clearly should not bind or in any way affect the parties
to the note.   It certainly is a harsh rule to hold that a
mere custodian of paper may, without right, against his

instructions, without the payment of a dollar by the surety, without imposing on him a new obligation or hardship, release a maker from liability, by running the pencil or pen through a material word or line in the instrument. If that is the state of the law, it is an easy way to pay debts.

It may, however, be contended that the original note was avoided because of the averments showing the act of one of the makers with respect to the change. A reference to the bill discloses that it is charged that Randall and Borrodaile, or one of them, while the note was so in the possession of Armijo Bros. & Borrodaile, without authority, made the changes described in the bill. It nowhere appears that Randall had possession or custody of the note by Ruby's direction or consent. The contract was completed and liability fixed when the note was delivered to Ruby. After that Randall had no right to its custody, except on payment by him. It was then a completed transaction. He had made delivery. Suppose, after that, he had requested of Ruby a moment's inspection of the note, and while having it so in his custody Randall had stricken out or written in material words, without the knowledge or consent of Ruby, would such an act release Talbott, the other maker? If so, all an accommodation maker need do, to pay his obligation or to discharge his debt, is to procure the maker to ask of the holder an examination of the paper, which, in the trust usually pertaining to business transactions, would be granted, and then, while making such examination, to strike out any material word, or write in one, and in a moment thereby the obligation, "in the twinkling of an eye," is paid, discharged, gone. The mere statement of such a proposition would seem to carry its own refutation. How, under the allegations of the bill, does Randall stand differently toward the note? What right has he to the possession of the note? Ruby did not intrust it

to him.    He did not instruct or authorize Armijo Bros.
or Borrodaile to do so, or to even allow Randall the
custody of or inspection of it, but only to  surrender it
to the custody of Randall, on condition that a new ob-
ligation in different form should be made.    If this note
were in Randall's hands, pending the payment of the
money, before the completion of the transaction for de-
livery to Talbott on payment of the money, and  while
so in his hands Randall altered the same, it may be a
different rule would apply; but after the transaction
was complete, the note delivered to Tabott, and the
liability of all parties to it fixed, under the averments
of the bill, I believe that Randall should be regarded
as a stranger, and that neither his alteration of the
note, nor the unauthorized change in its terms, could
destroy the plaintiff's right of action on the original in-
strument.    The complainant was careful not to aver he
did not have a right of action on the note in its original
form, but he did aver that upon advice of his counsel
he believed he had no right of action on the note in its
new and altered form.    That he did not have such right
of action is apparent, but I believe he has a right of
action on the original note, if the averments of the bill
are true, and he did not afterward ratify the act which
he imputes to Borrodaile or Randall in changing the
note, notwithstanding the alteration, and for that rea-
son he has an  adequate remedy at law, and did not
need the aid of a court of equity to restore the note.
On that ground the action of the court below in sus-
taining the demurrer, it seems to me, should be sus-
tained.