### NEWLAND *v.* FIRST BAPTIST CHURCH SOCIETY OF BELLEVUE.

1. REFORMATION OF INSTRUMENTS—MISTAKE OF SCRIVENER.
    Equity has power to correct a written conveyance so as to carry out the intention of the grantor where a mistake has been made by the scrivener.

2. EVIDENCE—PRESUMPTIONS—ERASURES IN CONVEYANCES.
    Where nothing suspicious appears on the face of a deed beyond the fact that an erasure is manifest, the presumption commonly is that the alteration was made before the deed was executed.

3. REFORMATION OF INSTRUMENTS—MISTAKE OF SCRIVENER—EVIDENCE.
    Evidence examined and *held* sufficient to support a finding that the grantor in a deed intended to convey a life estate only, and that the deed failed of such purpose by mistake of the scrivener.

Appeal from Eaton; Smith, J. Submitted February 2, 1904. (Docket No. 60.) Decided July 27, 1904.

Bill by Charles A. Newland and others against the First Baptist Church Society of Bellevue and another to reform and set aside certain deeds.    From a decree for complainants, defendant church society appeals.    Affirmed.

*Thomas Sullivan,* for complainants.

*J. M. & J. L. Powers,* for appellant.

MOORE, C. J.    This is a litigation between the First Baptist Church Society on the one side and the other parties to the case, who are the heirs of Albert M. Newland, deceased.    June 6, 1885, Albert M. Newland and wife made to his daughter, M. Helen Newland, a conveyance of 50 acres of land, "the said party of the second part to have possession of the above granted premises on the death of both of the parties of the first part."    The consideration was stated to be "the sum of one dollar and the interest of the party of the second part in the estate of the parties of the first part."    The scrivener, in making the conveyance, used a short form of warranty deed.    We have the original before us.    In it the words "and assigns" are erased in the two places where they appear in the deed by having a broad pen mark run through them.    This deed was recorded in the office of the register of deeds May 3, 1894.    The record in the office of the register shows the words "and assigns," where they first appear in the deed, have the pen run through them, but it was not run through them where they last appear in the deed.    Mr. Albert M. Newland died in August, 1894, and his widow in the following February.    April 26, 1899, M. Helen Newland conveyed the premises by warranty deed to the First Baptist Church Society, reserving a life estate to herself.    The consideration named was $1.

The complainants filed their bill of complaint, claiming:

*First:* That the deed from Albert M. Newland and Martha A. Newland to M. Helen Newland created only a life estate in her, that being the purpose and intention of the grantors; and that the scrivener, believing that he

was carrying out that purpose and intention, struck out the words " and assigns," and that the paper drafted, through the mistake of the scrivener, does not properly express the purpose and intention of the grantors in making it.

*Second.* That the deed made by M. Helen Newland is void for the following reasons: (*a*) That M. Helen Newland had no estate in fee to convey. (*b*) That the said M. Helen Newland was incompetent at the time the said deed was made and executed, and was not of sufficient mental capacity to make and execute a deed. (*c*) That the deed was procured through fraud and undue influence.

The case was tried in open court. The record contains nearly 450 pages. The circuit judge filed his conclusions in writing. He was of the opinion he would not be justified in setting aside the deed on either the ground of incompetency or undue influence, but he did set it aside because he was "satisfied from the proof in the case that it was the intention of her father to convey to her only a life estate, and that the conveyance to her, with the light thrown on it by the proof in the case, only gives her that." The case is brought here by appeal.

The important question in the case is one of fact: Did Mr. and Mrs. Newland intend to convey to their daughter a title in fee to the land, reserving to themselves a life estate, or did they intend to give to her simply a life estate to the land ? Counsel for the defendant make a very elaborate legal argument as to the effect of the conveyance should it be found that the words "and assigns" were stricken out when the complainants claim it was done, but we do not think that discussion is germane to the question involved. The right of a court of equity to correct a written conveyance so as to carry out the intention of the grantor, where a mistake has been made by the scrivener, is well established. 1 Story, Eq. Jur. (12 Ed.) §§ 153–155; *Canedy* v. *Marcy*, 13 Gray, 373; 15 Am. & Eng. Enc. Law, p. 673. Was there a mistake made? This is a troublesome question. It is insisted upon the part of the defendant that Mr. Newland made conveyances to his other children

of their proportion of his real estate, reserving to himself and wife a life interest therein, and that when he made this deed to his daughter he intended to convey a title in fee, subject to a life interest for himself and wife. It is their further claim that when Miss Newland made her deed to the church society the pastor of the church, the attorney who drew the deed, Mr. Sweet, and others saw the deed from her father to her, and that they did not see that the words "and assigns" were stricken out of the deed, and that they would have been likely to have observed it if it had been done. It is their further claim that Miss Newland retained the deed given to her by her father, and that after her death some person, whose interest it was to do so, drew a pen through the words "and assigns" in the deed—they having possession thereof—and that the same thing was done with the record in the office of the register of deeds. On the other hand, there is considerable testimony that Mr. Newland, after he made the deed, told several parties that his daughter could not convey any title to the land. There is testimony of several witnesses who claim to have seen the deed with the erasures before it was recorded. The scrivener says the erasures were made by him at the time he prepared the deed. Speaking of Mr. Newland and the drafting of the deed, he testified:

"He said he wished that she should be provided for if she should outlive him, and talked with me about the way to do it. I suggested a will. He objected, but wished me to make a deed to her in such a way that she could not dispose of it—dispose of the property which he designed to convey to her for her support. * * *

"*Q.* In pursuance of that conversation, with the purpose of carrying out his desire, you drew this paper marked Exhibit A?

"*A.* I did.

"*Q.* I call your attention to the fact that in the first clause, where the word 'assigns' appears, it seems to have been erased, and also lower down in the deed, in the second clause, that the word 'assigns' appears to be erased. I ask you if you erased those words at the time you drew the deed?

"*A.* I am sure that I did, in accordance with his wish.

"*Q.* Was it your intention and his understanding that by erasing the word 'assigns' that it restricted her title to a life estate in the premises?

"*A.* It was. After this deed was drafted, it was signed by the parties, and acknowledged, and carried away by Mr. Newland. * * * My memory is clear, and it is my recollection that he wanted to give her this property for and during the term of her natural life in such a way she could not deed it away or dispose of it."

This testimony was not substantially weakened by the cross-examination. This witness seems to be a man of character and standing, his business being that of a banker. The presumption commonly is, where nothing suspicious appears on the face of the deed beyond the fact that an erasure is manifest, that the alteration was made before the deed was executed. 1 Cooley, Black. Com. (4th Ed.) 682, note, and cases cited; *Munroe* v. *Eastman,* 31 Mich. 283; *Sirrine* v. *Briggs,* 31 Mich. 443, and the cases there cited. This presumption is supplemented by the testimony to which we have called attention. If these erasures were not made by the scrivener, as testified to by him, then some one has committed the grave offense of forgery, and has followed that act by changing a public record. The trial judge saw and heard the witnesses. We think his estimate of the character and weight of the testimony is fully justified by the record.

The decree is affirmed, with costs of this court.

The other Justices concurred.