FIRST NATIONAL BANK OF CASSOPOLIS *v.* CARTER.

138   421
149   ²366

1. PLEADING — WRITTEN INSTRUMENT — EXECUTION — DENIAL ON OATH.

The statute (1 Comp. Laws, § 826) creating a presumption of execution of a written instrument declared upon and filed with the justice, cannot be first availed of by plaintiff in the Supreme Court in a case where the pleadings were oral and plaintiff merely declared on all the common counts in assumpsit.

2. BILLS AND NOTES—ALTERATION—ORDER FOR SCHOOL SUPPLIES.

Where, at the time an order for school supplies, in form a promissory note, was signed by school officers, it had attached to it a memorandum stating that the matter might be left to a vote of the district at the annual meeting, which was taken off before the order was transferred, there was a material alteration which avoided the instrument.

Error to Cass; Carr, J. Submitted November 18, 1904. (Docket No. 115.) Decided December 7, 1904.

Assumpsit by the First National Bank of Cassopolis against Charles W. Carter and others for the amount of an alleged school order. There was judgment for defendants, and plaintiff brings error. Affirmed.

*Lyle & Eby* and *Marshall L. Howell*, for appellant.

*Harsen D. Smith*, for appellees.

MOORE, C. J. This case was commenced in justice's court. Plaintiff declared orally on all of the common counts in assumpsit, and alleged that the school order filed in this cause was duly transferred by the American School Supply Company to the plaintiff for a valuable consideration, before due.

The defendants' plea was in writing. It was the gen-

eral issue, with "notice ,that the said school order was signed by them as officers of the school district mentioned in said order, said order to be approved by said district at its annual meeting if it so wished, or, if not, to be void; and they did not sign said order as guarantors of the same, or in any capacity other than as officers of said district."

On the day of trial in justice's court defendants were allowed to amend their plea as follows: That said order upon which said suit is brought is not the order signed and delivered by said defendants, inasmuch as the words, " Williamsville, Mich., Due Jan. 1, 1903," set out in said order, were not written therein at the time of the signing and delivering by said defendants. The case was appealed to the circuit court, where it was tried by a jury. From a verdict in favor of the defendants the case is brought here by writ of error.

Upon the trial a paper reading as follows was offered in evidence:

| | |
|---|---|
| *Green Allen............ P. O. .....................Treas.* | **STATE OF MICHIGAN.**     $37 .50 ............<br>County of Cass     Town of Calvin     Dist. No. 6     June 3 1902.<br>*Assessor of District No.....6. ...Township of......Calvin......will pay to the* AMERICAN SCHOOL SUPPLY CO., *or Bearer the sum of* THIRTY-<br>SEVEN & $\frac{50}{100}$ DOLLARS,<br>          *any school fund belonging to said District for* COMPLETE ENCYCLOPEDIA OF MODERN SCHOOL METHODS ILLUSTRATED; *comprising Reading, Grammar, Writing, Arithmetic, Business Course, History, Geographical Maps and Stand.*<br>     Issued by authority of Officers of said District and payment guaranteed by School Officers P. O. Address.<br>Williamsville, Mich. }  .          C. W. CARTER.<br>Due Jan 1 1903                         E. WINTERS.<br>                                       GREEN ALLEN. |

20540

The cashier of the bank testified:

"I am personally acquainted with the parties who signed that instrument.

" *Q.* You may state if you would have bought that instrument if it had not been for the fact that their names appeared there, as they do upon the paper as guarantors

and makers of that instrument.   *A.* We relied upon the signers for payment."

On the cross-examination he testified:

" *Q.* Didn't he [Corcoran] tell you that he was around selling these school supplies to the different school districts?   *A.* Yes, sir.

" *Q.* And taking orders on the school districts?   *A.* Yes, sir.

" *Q.* And made some arrangements with you that after he would get these orders in that he would sell them to the bank?   *A.* Yes, sir.   And I agreed that I would take them upon some discount.   I understood that he was selling to the districts, and taking an order, issuing an order, obtaining an order upon the district.

" *Q.* From the officers?   *A.* Yes, sir.   That is the way I understood it.

" *Q.* You knew that it required the signatures of the officers of the district in order to make a valid order drawn upon the assessor, didn't you?   *A.* Yes, sir.

" *Q.* And you knew, I suppose, when you bought this order, that those names represented the names of men who were officers of the district, didn't you, or supposed that they were officers?   *A.* Yes, sir.

" *Q.* And you believed that they signed this order in the capacity of officers, didn't you?   *A.* Well, yes.   We bought that order on the signatures as they appear.   I knew that district number 6 was worth it, and could be forced to pay a valid order issued upon it to the amount of $37.50; but that was not the reason that I bought it.

" *Q.* Didn't you rely upon the district for your pay?   *A.* If the order had been signed differently, I should not have bought it."

No other witnesses were sworn for plaintiff.

On the part of the defendants it was shown (we state the substance, not the details, of the testimony) that it was represented to the persons who signed the order, and who were school officers, that they were to incur no individual responsibility, but were to be regarded as acting for the school district; and that the articles ordered were to be shown to the annual meeting by the agent who took the order, and, if the school electors did not favor the purchase of the articles, they were to be taken away, and no

liability incurred; that the agent said the part of the paper which he would sign would protect them fully, and that the paper presented by the bank was only a part of the paper signed by defendants.

It was also testified that when Mr. Carter and Mr. Winters signed the paper it did not have the words, "Williamsville, Mich., Due Jan. 1, 1903," upon it, and when Mr. Allen signed it the words, "Due Jan. 1, 1903," were not there; that there was delivered to Mr. Carter and Mr. Winters at the time they signed a compared copy of the paper which they signed, which reads as follows:

---

**STATE OF MICHIGAN.**          $37.50

County of Cass          Town of Calvin          Dist. No. 6          June 3 1902

*Assessor of District No....6,   ...Township of.....Calvin.....will pay to the* AMERICAN SCHOOL SUPPLY CO. *or Bearer, the sum of* THIRTY-SEVEN & $\frac{50}{100}$ DOLLARS,

*out of any school fund belonging to said District for* COMPLETE ENCYCLOPEDIA OF MODERN SCHOOL METHODS ILLUSTRATED; *comprising Reading, Grammar, Writing, Arithmetic, Business Course, History, Geographical Maps and Stand.*

Issued by authority of Officers of said District and payment guaranteed by School Officers P. O. Address

} { C. W. CARTER.
E. WINTERS.

*(margin: Treas. ... P. O.)*

---

### STATE OF MICHIGAN SCHOOL AID VOUCHER.

..Calvin.........Township,     ..Cass..........County,     ..June 3.........1902

THIS CERTIFIES, *That we have received from School District No. Six their official voucher on the proper fund for Complete Encyclopedia of Modern School Methods; consisting of Reading, Language, Grammar, Phonics. Penmanship, Number and Exchange Drill, Fractions, Tables of Weights and Measures, Business Methods, Bookkeeping, History, Business Forms, Civil Government, Political History and Stand with 12 books, Teachers Manual and Report Blanks.*

*To be shipped care of Mr. C. W. Carter, Vandalia, Michigan, about the 10th day of June, 1902.*

*If not received on time or damaged, please notify, that we may serve all faithfully.*

AMERICAN SCHOOL SUPPLY CO.,
JOHN CORCORAN, Solicitor.                    CHICAGO, ILL.

---

This matter may be left to a vote of the district at annual meeting.

The testimony of defendants was not disputed.

The oral testimony was objected to for the reason—

" That the defendants in this suit cannot contradict the writing that they have signed and put into circulation; that the agreement that they came to, and all prior talk, was merged in the agreement which they subsequently signed, and they cannot come here at the present time with parol evidence and contradict it. Further object that this is inadmissible under the pleadings—the evidence as to fraud."

The objection to the admission of the writing was stated by counsel to be:

" We object to that as a contemporaneous agreement in writing upon an attached paper. Any testimony as to that is inadmissible under the pleadings in the case."

The first assignments of error relate to the reception of testimony showing the circumstances under which this paper was given. Counsel say that, as defendants did not, with their plea, deny on oath the execution of the note, the testimony is incompetent; citing 1 Comp. Laws, § 826, and cases.

That section reads:

" When any written instrument, purporting to be executed by one of the parties, is declared upon or set off, it may be used in evidence on the trial of the cause against such party, without proving its execution, unless its execution be denied by oath at the time of declaring, or pleading, or giving notice of set off, if such instrument shall be produced and filed with the justice."

We do not think the point now made was made in the court below. Plaintiff's pleading was informal. It was upon the common counts in assumpsit. It did not declare upon the order. And while it was said in the court below that certain evidence was not permissible under the pleadings, we are unable to find from the record that it was suggested either in justice's court or the circuit court that the objection was because defendants had not denied upon oath the execution of the order. We think it too late to take that position now.

Error is assigned upon the court's failure to give plaintiff's requests to charge and upon the charge as given.

In our view of the case, it will not be necessary to discuss these assignments. When the paper offered in evidence by the bank was signed by defendants, it contained nearly as much again language as it contained when it came to the bank. The lower half of it, which qualified the upper half, had been separated from it. The upper half, with material words added after it was signed, was delivered to the bank.

In *Wait* v. *Pomeroy*, 20 Mich. 425, a memorandum written under a promissory note qualified its obligations. Chief Justice Campbell, speaking for the court, said:

"The only question raised in this case is whether the destruction of a memorandum, written under a promissory note, and qualifying it, vitiates the note in the hands of a bona fide holder having no knowledge of the alteration. We think it quite clear upon the authorities that the note and memorandum constituted but one contract, and were in law a single instrument. There are some decisions which have held particular memoranda immaterial. But no case has been cited, and we have found none, which holds that, if material, it may be disregarded. The cases are fully collected in 2 Pars. Bills & Notes, 539 et seq. And while a memorandum on a separate paper is said by Mr. Parsons not to affect parties taking without notice, it is otherwise where all is in one instrument. To use the language of the Court of Queen's Bench in *Warrington* v. *Early*, 2 Ellis & Bl. 763:

" 'This forms part of the contract. If would clearly have been so if it had been written in the body of the note, and we think a memorandum of this kind written in the corner of the note is equally part of the contract, because the contract must be collected from the four corners of the document, and no part of what appears there is to be excluded.' * * *

"There seems at first a plausibility in the argument that a party, by signing a note with a separate memorandum beneath, puts it in the power of the holder to gain easier credit for the note than it would be likely to gain if altered in the body. But, as it was well suggested on the argument, no one is bound to guard against every possibility of felony. And practically it is a matter of everyday occurrence to feloniously alter negotiable paper as successfully by changes on the face as in any other way.

The public are not very much more likely to be defrauded in one way than in another.  There can never be absolute safety except by looking to the character and responsibility of the persons from whom such paper is received, and who are always bound to respond for the consideration if it is forged.  *Little* v. *Derby*, 7 Mich. 325.  If a party makes a contract in such a manner as is authorized by law, he has a right to object to being bound to any other."

In *Bradley* v. *Mann*, 37 Mich. 1, the maker of a note, before negotiating it, and after it was indorsed without the consent of the indorser, added a clause providing for the payment of interest.  Justice GRAVES, in speaking for the court, said:

"The undertaking of the plaintiffs in error in regard to the amount was not left open and in blank, but was defined and settled when they prepared, indorsed, and sent the instrument to Whittlesey; and they could not be made liable as upon a different undertaking without their consent.  The moment he made the alteration in the amount there remained nothing to which their indorsement was applicable, no engagement they had consented to be liable upon, and it is their undertaking, and not that of Whittlesey, which is in question.  The circumstance that the instrument had not left Whittlesey's hands and assumed the legal character of a finished note, or the fact, if it was so, that it was meant for Whittlesey's accommodation simply, could have no force to make his unauthorized alteration binding on them without their assent, or to invest him with right to vary the extent of the liability they had predetermined for themselves.  When the paper left their hands the amount of the obligation they assumed was as securely liquidated to preclude change without their consent as it would have been if the instrument had then become effective, and the indorsement had been as the defendant in error insists it was, and as it may have been, a nonaccommodation one.  The authorities are so full and distinct against the doctrine of the charge that it is only necessary to cite them.  *Miller* v. *Finley*, 26 Mich. 249; *Holmes* v. *Trumper*, 22 Mich. 427; *Wait* v. *Pomeroy*, 20 Mich. 425; *Trigg* v. *Taylor*, 27 Mo. 245; *Waterman* v. *Vose*, 43 Me. 504; *Fay* v. *Smith*, 1 Allen, 477; *Draper* v. *Wood*, 112 Mass. 315; *McGrath* v. *Clark*, 56 N. Y. 34; *Benedict* v. *Cowden*, 49 N. Y. 396; *Fulmer* v. *Seitz*, 68 Pa.

St. 237; *Wood* v. *Steele,* 6 Wall. 80; *Aetna National Bank* v. *Winchester,* 43 Conn. 391; *Schnewind* v. *Hacket,* 54 Ind. 248."

And it was held the indorsers were released.

If we apply the principles announced in these cases, we must regard the half of the paper detached after it was signed as a very material portion of it. Reading all of the paper as it then was, it indicates very clearly a transaction to which the American School Supply Company upon the one side was a party, and School District No. 6 was another party, and brings the case within the principle announced in *Bailey* v. *Tompkins,* 127 Mich. 74. The cutting or tearing off the lower half of the instrument was a material alteration of it. The court might very properly have directed a verdict in favor of the defendants.

Judgment is affirmed.

The other Justices concurred.