ENSIGN *v.* FOGG.

1. BILLS AND NOTES—ANOMALOUS INDORSER—NEGOTIABLE INSTRUMENTS ACT—ALTERATION.

The indorsement of a third person, appearing on the back of a note underneath the signature of the payee, is conclusively presumed to be that of a subsequent indorser, and not that of a joint maker or surety, and the contention that such indorsement of an irresponsible person in no way interested in the note, without the knowledge or consent of the maker or holder, is an alteration, cannot be sustained. Act No. 265, Pub. Acts 1905, §§ 50, 65, 69, 70, 126, 127 (2 How. Stat. [2d Ed.] § 2721 *et seq.*).

2. SAME—MOTIONS—STRIKING OUT INDORSEMENT.

Pursuant to the provisions of section 50 of the negotiable instruments law, the request of plaintiff's counsel for leave to strike out such indorsement, made at the trial, might properly have been granted.

3. SAME—PLEADING—JUSTICES OF THE PEACE—DENIAL UNDER OATH —EXECUTION OF NOTE.

In order to have the benefit of the defense of alteration

under 1 Comp. Laws, §§ 767, 826 (5 How. Stat. [2d Ed.] §§ 12220, 12273), defendant must deny under oath the execution of the instrument at the time of pleading..

4. SAME—ALTERATION—HOLDER IN DUE COURSE.

   In the absence of evidence that plaintiff made any change in the terms of the instrument, which defendant claimed showed an alteration, as a bona fide holder, the plaintiff was entitled to recover according to its original tenor. Act No. 265, § 126, Pub. Acts 1905 (2 How. Stat. [2d Ed.] § 2797).

5. SAME—EVIDENCE—PRESUMPTION.

   Where there is nothing suspicious upon the face of an instrument, beyond the fact that an erasure is manifest, the presumption is that any alteration appearing on the face thereof was made before the execution of the instrument.

Error to Ingham; Collingwood, J.  Submitted June 3, 1913.  (Docket No. 15.)  Decided October 1, 1913.

Assumpsit in justice's court by Charles B. Ensign against Frank M. Fogg on a promissory note. From a judgment for defendant, plaintiff appealed to the circuit court. Judgment for plaintiff. Defendant brings error. Affirmed.

*L. B. Gardner,* for appellant.

*McArthur & Dunnebacke,* for appellee.

STONE, J.  This action originated in justice's court, and was brought upon a promissory note signed by the defendant, which note is in the words and figures following:

May
"LESLIE, MICH., ~~April~~ 14, 1909.
"One year after date I promise to pay to the order of W. S. Hunter, Jr. ($220.00), two hundred twenty dollars, at the office of People's Bank of Leslie, Mich., value received, with interest at five per cent. per

annum from maturity until paid, and attorney's fees, if not paid at maturity.

"Address, Leslie Mich.
          "R. R. No. 4.
    "Due 5—14—10.

                                   "F. M. FOGG."

On the back of the note appear the indorsements, "W. S. Hunter, Jr. Lula G. Allen."

It appears that the suit in justice's court was begun by summons issued on December 1, 1910, returnable December 10, 1910. The summons was returned personally served on December 2, 1910. Upon the return day of the summons the suit was by consent of the parties adjourned to December 17, 1910, and from the last-named day it was further adjourned by consent and stipulation of the parties from time to time until March 4, 1911, at which date the following entry was made in the docket of the justice:

"In the above cause defendant, under his plea of the general issue, orally gives notice that the note sued upon was obtained by fraud, and for want of consideration, also of recoupment of damages, and that plaintiff is and was not a bona fide purchaser of said note."

By stipulation the suit was further adjourned from time to time to July 10, 1911, when the parties appeared for trial, and the following entry was made in the docket:

"Plaintiff moved to amend declaration, and declared orally against the said defendant, under the common counts in assumpsit, and more especially upon a certain promissory note now on file in this court. Said amendment to take effect nunc pro tunc as of March 4, 1911."

The case was tried in the circuit court upon the pleadings as they were made in justice's court.

It is undisputed that the note was given upon the purchase by defendant from W. S. Hunter, Jr., of a

gas lighting plant, which was installed in defendant's country home in the spring of 1909.

The plaintiff was the only witness sworn upon the trial in the circuit court. He testified in substance that just prior to March 15, 1910, he purchased the note in question of W. S. Hunter, Sr., to whom the note had been transferred by W. S. Hunter, Jr., the payee; that he purchased the note and paid for it in the regular course of his business as a discount banker; that Lula G. Allen was in plaintiff's office perhaps with W. S. Hunter, Sr., in connection with the transfer of the note; that she put her name upon the back of the note, and he was inclined to think that she signed it in witness' office, under the general rule that he had of all paper that was brought in by a person—if a man or woman offered paper, he had the indorsement put upon it when he purchased it— that, if Lula G. Allen brought notes in the office for Mr. Hunter, she would have been required to sign on the back of the notes; that Lula G. Allen had been and perhaps then was the stenographer of W. S. Hunter, Sr., and witness understood that she was in some way or other associated with W. S. Hunter, Sr., and the plaintiff further testified on cross-examination as follows:

"There was a bunch of notes brought in at the same time with the Fogg note. I don't recall at this time how many there were. They were against various people; but I do not recall who they were. I cannot recall any person's name for certainty. I don't recall how many notes there were. There were several.

"Q. Did Lula G. Allen sign all those notes, indorsing them?

"A. I think very probably her signature was on them; but it might not have been. I think she did sign other notes, other than the one in question.

"Q. Have you any recollection that she did?

"A. Why, yes; she did. I could not undertake to tell how many notes. I cannot recall whether they

were all signed or not, nor can I recall how many she did sign. I think probably she signed them all.

"*Q.* Why did you have her sign these notes?

"*A.* In compliance with the custom of my office; yes, sir.

"*Q.* Why did you want Lula G. Allen's name upon these notes?

"*A.* Because I thought they were brought in by her, and I always have a party that brings in a note, and makes the transaction, put their name on the note as a way of identification, because they guarantee that the notes come to them regularly, and also enables me to trace back how I got the note, who I got the note of, and who they represented, and whose office they were from. W. S. Hunter, Sr., should have signed it. It was an oversight that he did not.

"*Q.* If it had not been an oversight, you would have had W. S. Hunter, Sr., sign the note?

"*A.* He was not in at the time. He was in afterwards; but it was an oversight my not having him sign it.

"*Q.* Did Lula G. Allen sign that note there at the office before Hunter came in?

"*A.* I think very probably she did before he came in. My recollection is not quite clear on that subject; but I think she did."

The note being in evidence, and the plaintiff having rested his case, the defendant moved the court to direct a verdict against the plaintiff for the following reasons:

(1) "That there is a material alteration made in said note after the same was executed and delivered by Frank M. Fogg, the maker, and without his knowledge and consent, and with the knowledge and consent of C. B. Ensign, the plaintiff, by adding to said note the name of Lula G. Allen upon the back thereof, and therefore such material change vitiates the note."

(2) "That the indorsement of the name of Lula G. Allen upon said note after the same was executed and delivered by Frank M. Fogg, the maker, and without his knowledge and consent, and with the knowledge and consent of C. B. Ensign, the plaintiff, is a material alteration, and therefore vitiates the note."

(4) "That there is a material alteration in that note, in crossing out the following words and figures, to wit, 'April,' and the erasure of a figure, not apparent as to what particular figure or figures, and in putting above it the following words and figures, to wit, 'May 14;' the change purporting to have been made after the execution and delivery of said note by Frank M. Fogg, the maker, thus changing the time of payment."

The said motion was overruled by the court, and a verdict and judgment for the plaintiff were directed by the court.

The defendant has brought the case here for review, and his counsel states, in his brief, that two questions are raised by the assignments of error:

*First.* "Is the indorsement of a note, after the same has been negotiated by the payee, by an irresponsible person who is in no way interested in the note, as owner or otherwise, and without the knowledge or consent of the maker, and with the consent and solicitation of the holder, such an alteration as will defeat a recovery thereon?"

*Second.* "Is the changing of the date of the note from 'April,' and the day of the month named therein, to 'May 14,' without the knowledge or consent of the maker, such an alteration as will defeat a recovery thereon?"

We will consider these questions in the order in which they are presented.

*First.* Counsel for appellant first calls attention to sections 126 and 127 of Act No. 265, Public Acts of 1905 (2 How. Stat. [2d Ed.] § 2797), being an act relating to negotiable instruments. Section 126 is as follows:

"Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized, or assented to the alteration, and subsequent indorsers. But when an instrument has been materially altered and is in the hands of a holder, in due course, not a party to the

alteration, he may enforce payment thereof according to its original tenor."

Section 127 reads as follows:

"Any alteration which changes:  *First,* the date; *second,* the sum payable, either for principal or interest; *third,* the time or place of payment; *fourth,* the number or the relations of the parties; *fifth,* the medium of currency in which payment is to be made; or which adds a place of payment where no place of payment is specified, or any other change or addition, which alters the effect of the instrument in any respect, is a material alteration."

As we understand the claim of appellant's counsel, it is that under the fourth subdivision of section 127 Lula G. Allen's indorsement changed the number and relations of the parties, and was a material alteration of the note. We are unable to agree with counsel in this claim. A careful reading of the negotiable instruments statute shows that it is expressly provided that promissory notes may be indorsed and negotiated without the consent of the maker. We think that the indorsement of this note by Lula G. Allen, after the indorsement of the payee of the note in blank, worked no change in the number or relations of the original parties to the note. She was a mere subsequent indorser.

As her indorsement was a blank indorsement, and appears upon the note below that of the payee, her liability thereon under sections 65, 69, and 70 of the act is conclusively presumed to be that of a subsequent indorser, and not that of a joint maker or surety. The entire act should be construed together and its provisions harmonized if possible. The plaintiff was the holder of this note. Section 50 of the act provides as follows:

"The holder may at any time strike out any indorsement which is not necessary to his title. The indorser whose indorsement is struck out, and all in-

dorsers subsequent to him, are thereby relieved from liability on the instrument."

The indorsement of this note in blank by W. S. Hunter, Jr., the payee, made it negotiable by delivery. The indorsement subsequently by Lula G. Allen was not necessary to the title of the plaintiff. The record shows that plaintiff's counsel asked leave of the court upon the trial to strike out the signature and indorsement of Lula G. Allen, pursuant to the provisions of section 50, and the court might well have granted the request.

It has been held that the intervening indorsements need not be stricken out before the trial, but may be after the plaintiff has finished his case. See Bunker on Negotiable Instruments, p. 95, citing *Mayer* v. *Jadis*, 1 Moody & R. 247. If the holder may at his will strike out such an indorsement without its affecting the liability of the maker, it cannot be held that the placing of such an indorsement upon a note is a material alteration thereof. We are of opinion that there is no merit in the contention of appellant upon this question.

*Second.* There are a number of reasons why the second question of appellant's counsel cannot be answered in his favor.

*(a)* The state and condition of the pleadings. Is the question of a material alteration an issue in the case under the pleadings? We think not under our practice. The execution of the note declared on was not denied under oath. By section 767, 1 Comp. Laws (5 How. Stat. [2d Ed.] § 12220), it is provided that the pleadings in a suit before a justice of the peace may be either written or verbal, and that the execution of a written instrument, filed with the justice, shall not be denied, except under oath, as thereinafter provided. Section 826, 1 Comp. Laws (5 How. Stat. [2d Ed.] § 12273), is as follows:

"When any written instrument, purporting to be executed by one of the parties, is declared upon or set off, it may be used in evidence on the trial of the cause against such party, without proving its execution, unless its execution be denied by oath at the time of declaring, or pleading, or giving notice of set off, if such instrument shall be produced and filed with the justice."

It is the claim of appellant that the note was not produced and filed with the justice at the time of declaring. On the other hand, the plaintiff claims that the note was filed with the justice when the plaintiff declared on March 4, 1911, when the defendant pleaded the general issue and gave notice of the special defense, that the note was procured by fraud, etc., but that the justice neglected to note in his docket the substance of the declaration and the filing of the note sued upon, hence the entry in the docket of July 10, 1911, above set forth.

If defendant is correct in his position that there was no declaration until July 10th, we have the anomalous condition of a plea to a declaration, before the declaration was filed. If the declaration was not filed or made until July 10th, that was the proper time to produce and file the note under the statute, and the defendant should then have denied its execution under oath.

Under our practice, whenever it is claimed that the instrument declared upon has been altered or changed in any material part, so that the true tenor and effect thereof is not as pleaded or set forth, and the note has been produced and filed with the justice in accordance with the terms of the statute, the execution of the instrument must be denied on oath at the time of pleading, and such alteration is not confined to the signature only; but whenever it is claimed that the instrument declared upon and filed is not in substance the instrument executed by the party, its execution must be denied upon oath as indicated. *Pegg* v.

*Bidleman*, 5 Mich. 26; *People* v. *Johr*, 22 Mich. 461; *Polhemus* v. *Savings Bank*, 27 Mich. 44; *Jourden* v. *Boyce*, 33 Mich. 302; *Lobdell* v. *Merchants' & Manufacturers' Bank*, 33 Mich. 408; *Anderson* v. *Walter*, 34 Mich. 113; *Freeman* v. *Ellison*, 37 Mich. 459; *Ortmann* v. *Merchants' Bank*, 41 Mich. 482 (2 N. W. 677) ; *Jenkinson* v. *Monroe Bros. & Co.*, 71 Mich. 630 (39 N. W. 854) ; *Inglish* v. *Ayer*, 92 Mich. 370 (52 N. W. 639) ; *Union Central Life Ins. Co.* v. *Howell*, 101 Mich. 332 (59 N. W. 599, and note) ; *Ada Dairy Ass'n* v. *Mears*, 123 Mich. 470 (82 N. W. 258) ; *Naftzker* v. *Lantz*, 137 Mich. 441 (100 N. W. 601) ; *First Nat. Bank* v. *Carter*, 138 Mich. 421 (101 N. W. 585) ; *Charles H. Werner & Sons Co.* v. *Lewis*, 155 Mich. 450 (119 N. W. 431).

*(b)* Another reason why defendant cannot maintain his second claim is that there was no evidence that plaintiff made any alteration in the date of the note. There was no evidence that the plaintiff was not a holder, in due course, for value before maturity, and under the terms of section 126 of the negotiable instruments act, above quoted, it is provided as follows:

"But when an instrument has been materially altered and is in the hands of a holder, in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor."

According to the claim of defendant, by its original tenor the note bore date in April. Interest began to run at maturity, hence by the claimed original tenor of the note plaintiff would be entitled to a larger judgment than he recovered for he recovered interest only from May 14, 1910.

*(c)* There was no evidence that the date of the note was altered after execution. The defendant relies upon a presumption merely. An inspection of the note furnishes us with no evidence that the note was altered after it was signed. There is nothing

suspicious in the appearance of the note. It may have been as claimed by plaintiff, that as originally prepared it bore the word "April," but when signed the change was made to "May 14" by an indelible pencil. The bottom of the note shows the figures in pencil "5—14—10," indicating when due.

We think that the rule is now well established in this State that, where there is nothing suspicious upon the face of an instrument beyond the fact that an erasure is manifest, the presumption is that the alteration was made before the instrument was executed. *Munroe* v. *Eastman*, 31 Mich. 283; *Sirrine* v. *Briggs*, 31 Mich. 443; *Newland* v. *Baptist Church Society*, 137 Mich. 335 (100 N. W. 612); *Arnold* v. *Brechtel*, 174 Mich. 147 (140 N. W. 610); *Connery* v. *Connery*, 175 Mich. 544 (141 N. W. 615).

So in any view of the case which we are able to take on this record, we are of the opinion that the circuit court reached the correct conclusion in directing a verdict for the plaintiff, and the judgment of the circuit court is affirmed.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, KUHN, OSTRANDER, and BIRD, JJ., concurred.