BROWN *v.* PARKER.

SURVEYS—SWAMP LANDS—BOUNDARIES—MEANDER LINES—HUNTING—INJUNCTION.

Where marshy land adjacent to one of the Great Lakes was surveyed by the general government, being bounded by the meander line of the lake, and was afterwards conveyed to the State under the swamp-land act, and by the State to a private purchaser, the character of such territory as land, and not as a part of the bed of the lake, is conclusively established, and the purchaser owns an absolute title up to the meander line, and may enjoin the hunting of game within the limits of his ownership.

Appeal from Monroe; Kinne, J. Submitted January 9, 1900. Decided July 10, 1901.

' Bill by Harvey H. Brown and others to enjoin John Parker and others from hunting on complainants' land. From a decree for complainants, defendants appeal. Affirmed.

*E. T. Wood* (*Willis G. Clarke*, of counsel), for complainants.

*E. R. Gilday* and *Willis Baldwin* (*George Gartner*, of counsel), for defendants.

HOOKER, J. The complainants seek to enjoin defendants from hunting ducks on wet and marshy land adjacent to Lake Erie, near Monroe. The defendants insist that the lands are a part of the bed of the lake, and that the public has a right to hunt and fish upon them. See 1 Comp. Laws, §§ 1265–1267; *People* v. *Silberwood*, 110 Mich. 103 (67 N. W. 1087, 32 L. R. A. 694); 1 Comp. Laws, § 1261 *et seq.; People* v. *Warner*, 116 Mich. 228 (74 N. W. 705); 2 Comp. Laws, § 5875 *et seq.;* Act No. 171, Pub. Acts 1899. The Federal government surveyed the premises in question, which are bounded by the meander lines of Lake Erie, and subsequent to 1850 conveyed them to the State under the State swamp-land act, and the complainants have derived title from the State. The defendants claim that they were submerged lands, and that title passed to the State on its admission in 1836, although they had been previously surveyed as land, and have since been treated as such by both Federal and State governments.

While it is true that the Federal government took title to the land at the bottom of the lakes in trust under the cession from Virginia, and could not properly dispose of it otherwise than in a substantial discharge of its trust, it was not without power over the lakes during the territorial period. It was said in *Shively* v. *Bowlby*, 152 U. S. 48 (14 Sup. Ct. 566), that:

"We cannot doubt, therefore, that Congress has the power to make grants of lands below high-water mark of navigable waters in any territory of the United States, whenever it becomes necessary to do so in order to perform international obligations, or to effect the improvement of such lands for the promotion and convenience of commerce with foreign nations and among the several States, *or to carry out other public purposes appropriate to the objects for which the United States holds the territory.*"

The Federal government had undoubted authority to adopt a system of surveying and sale of lands with a view to the improvement of the territory of Michigan, and this necessarily involved the definition of the boundaries of the lakes by a line which should not be subject to future controversy.    The meander lines of rivers and inland lakes, where the title to the bed is in the riparian owner, are of comparatively little significance, and it has frequently been said that they were not run to bound the possessions of the riparian owner, whose title might extend beyond them.    This is true even as to the Great Lakes.    We recall no case, however, that holds in express terms that title does not extend to meander lines.    It has frequently been said that they have two purposes,—one to make the boundaries of the bodies of water, the other as a means for computing acreage; and we have in mind one case where it was held that they had the further purpose of defining the extent of ownership, where the meander was not on a body of water, but upon a marsh, partly boggy and partly dry, subject to inundation and overflow, but not permanently covered with water, and bounded along the lake *by a sand beach* averaging one chain in width and three feet high.    *Niles* v. *Cedar Point Club,* 175 U. S. 300 (20 Sup. Ct. 124).

In the present case there is no claim that the meander line was not designed to show the boundary of Lake Erie, and presumptively it followed the then existing shore or beach.    In fact, there is testimony to that effect.    We think it was within the power of the Federal government

to define the bounds of the lake, and that its determination should be considered final and authoritative; for otherwise the titles to lands derived from the government would be subject to attack upon the ground that they were improperly or erroneously surveyed as land, when in real truth they were submerged land, and a part of the bed of the lake, and already belonged to the State. The surveys are held conclusive of boundaries in other cases, and why not in these? See *De Guyer* v. *Banning*, 167 U. S. 723 (17 Sup. Ct. 937); *Stoneroad* v. *Stoneroad*, 158 U. S. 240 (15 Sup. Ct. 822). In *Russell* v. *Maxwell Land-Grant Co.*, 158 U. S. 253 (15 Sup. Ct. 827), the court said, "A survey made by the proper officers of the United States, and confirmed by the land department, is not open to challenge by any collateral attack in the courts;" and it was said further in the same connection, quoting from *Beard* v. *Federy*, 3 Wall. 492:

"By it [the patent] the government declares that the claim asserted was valid under the laws of Mexico; that it was entitled to recognition and protection by the stipulations of the treaty, and might have been located under the former government, and is correctly located now, so as to embrace the premises as they are surveyed and described. As against the government, this record, so long as it remains unvacated, is conclusive. And it is equally conclusive against parties claiming under the government by title subsequent. It is in this effect of the patent as a record of the government that its security and protection chiefly lie. If parties asserting interests in lands acquired since the acquisition of the country could deny and controvert this record, and compel the patentee, in every suit for his land, to establish the validity of his claim, his right to its confirmation, and the correctness of the action of the tribunals and officers of the United States in the location of the same, the patent would fail to be, as it was intended it should be, an instrument of quiet and security to its possessor. The patentee would find his title recognized in one suit and rejected in another, and, if his title were maintained, he would find his land located in as many different places as the varying prejudices, interests, or notions of justice of witnesses and jurymen might suggest. Every fact upon which the decree and patent rest would

be open to contestation. The intruder, resting solely upon his possession, might insist that the original claim was invalid, or was not properly located, and therefore he could not be disturbed by the patentee."

See, also, U. S. Rev. Stat. § 2396; *French* v. *Fyan*, 93 U. S. 169; *More* v. *Steinbach*, 127 U. S. 70 ( 8 Sup. Ct. 1067 ); *Cragin* v. *Powell*, 128 U. S. 691 (.9 Sup. Ct. 203 ); *Brown* v. *Milliman*, 119 Mich. 606 ( 78 N. W. 785 ); *Niles* v. *Cedar Point Club*, 175 U. S. 300 ( 20 Sup. Ct. 124 ).

If the defendants are to be allowed to show that this land was a part of the bed of the lake, in contradiction of the survey, which treats it as land, and it be held not to be within the power of the government to survey and sell the same, whole governmental subdivisions of land purchased by the complainants will be taken from them. We are of the opinion that the survey by the government, and transfer to and sale by the State to the meander lines, as State swamp land, conclusively establish the boundaries of the lake, and that titles of abutting proprietors extend to them upon the presumption that must be conclusive, *i. e.*, that when the meander lines were run they followed the true shore of the lake. This being determined, and it appearing that there has been little if any change in the condition of the lands, though the sand beach be somewhat lessened, the case falls within the decision of *Sterling* v. *Jackson*, 69 Mich. 488 ( 37 N. W. 845, 13 Am. St. Rep. 405 ).

The decree of the circuit court should be affirmed.

The other Justices concurred.