ARNOLD *v.* BRECHTEL.

1. AMENDMENT—APPEAL AND ERROR—PLEADING.

The allowance, at the trial, of an amendment to plaintiff's declaration in ejectment, so as to relinquish claim to part of the land described in the pleading, was discretionary with the trial court and not reviewable.

2. PARTIES—HUSBAND AND WIFE—EJECTMENT.

Where plaintiff's declaration in ejectment originally covered lands owned by the entirety by defendant and his wife, and plaintiff by amending it, included only land claimed by him that defendant had invaded or trespassed upon, defendant's wife, who had not so far as shown claimed title to the land, was not a necessary party to the action. 3 Comp. Laws, § 10950 (5 How. Stat. [2d Ed.] § 13150).

3. DEEDS—JUDICIAL SALE—ESTATES OF INCOMPETENTS—GUARDIAN AND WARD.

Since the sale of land of an incompetent under guardianship is not open to collateral attack for irregularities in the proceedings, if the license to sell was granted and the guardian executed and acknowledged a deed in legal form conveying the premises (3 Comp. Laws, § 9165, 4 How. Stat. [2d Ed.] § 11315), a sale of premises, incorrectly described in petition, notice and license to sell as being in the adjacent town and range was not void where the guardian's deed contained a correct description of the land to be conveyed.

4. ALTERATION OF INSTRUMENTS—DEEDS—EVIDENCE.

Interlineations made in a guardian's deed of property sold under an order of the court, unexplained, are presumed to have been inserted before execution: it is for the party attacking the instrument to show its invalidity.

5. BOUNDARIES—MEANDER LINE—DESCRIPTION.

In a fractional section divided into lots, premises bounded on one side by a creek or stream are not affected by the fact, as shown by the original government survey, that the meander lines of the creek run over the land at one side of the true bed of the stream: they are not intended as boundaries but rather to determine the quantity of land in the parcel.

6. EVIDENCE—EJECTMENT.

Evidence of an original patent from the government may be dispensed with if plaintiff in ejectment shows a conveyance from parties who have been in possession for 20 years and upwards, using the ground for pasture, cutting the timber and building cabins thereon.

Error to Bay; Collins, J. Submitted November 11, 1912. (Docket No. 39.) Decided March 20, 1913.

Ejectment by John C. Arnold against John J. Brechtel. Judgment for plaintiff. Defendant brings error. Affirmed.

*Hall, De Foe & Henry (Gilbert W. Hand,* of counsel), for appellant.

*Cooley & Hewitt,* for appellee.

KUHN, J.   This is an action in ejectment which was tried before the court, without a jury, who made written findings of fact and of law as follows:

### "FINDINGS OF FACT.

"(1) The government survey, as entered in the plat book, shows that section 8, town 13 north, range 5 east, is a fractional section due to the convergence of the Souwesconning creek, and the Saginaw river.  The lots in said section, upon the westerly side of the said Souwesconning creek, are numbered 1, 2, 3, 4, and those of the easterly side, lying between the said creek and Saginaw river, are numbered 5, 6, 7, and 8.

"Plaintiff, John C. Arnold, claims title to a portion of lot 1.   Plaintiff's chain of title begins with the original location of said land, the government plat book, for which location no patent was ever issued.

"Plaintiff's immediate title was derived from a purchase of, and the payment for, the land described in last paragraph of 'Conclusions of Law,' and from a deed duly executed by Eliza M. Hawgood, guardian of John Bourn, an imbecile, and is as follows:

"'Know all men by these presents, that I, Eliza M. Hawgood, guardian of the estate of John Bourn, an imbecile, pursuant to an order of the judge of probate for the county of Bay, and State of Michigan, made at a session of said probate court, held at the probate office in the city of Bay City, in said county and State, on the fifteenth day of February, A. D. 1907, authorizing, empowering, and licensing me, the said guardian, to sell and dispose of, in conformity to the statute in such case made and provided, so much of the real estate, whereof the said John Bourn is seised for the purpose, as in said order mentioned, did sell and dispose of, at private sale, all of the estates, right, title and interest of said John Bourn in and to certain real estate and premises, in said order set forth and hereafter described, to John C. Arnold, of Frankenlust township, Bay county, Michigan, which said sale was, by an order made by the said judge of probate, on the first day of March, A. D. 1907, duly approved and confirmed, and I, the said guardian, was directed and empowered to execute and deliver a proper conveyance of said

real estate, so sold and disposed of at private sale, to John C. Arnold, the purchaser thereof, agreeable to the statute in such case made and provided. Now, therefore, know ye, that I, Eliza M. Hawgood, guardian of said estate, by virtue and in pursuance of the said several orders and decrees above referred to, and in consideration of the sum of seven hundred and fifty ($750.00) dollars, paid to me, the said guardian, by the said John C. Arnold, the receipt whereof is hereby acknowledged, I have sold and disposed of, and do hereby grant, sell and convey unto the said John C. Arnold, his heirs and assigns, forever, all the estate, right, title, and interest of the said John Bourn, in and to the following described lands, situated in the township of Frankenlust, county of Bay, and State of Michigan, to wit: A piece of land in lot one (1) fractional section eight (8), town thirteen north, of range 5 east, commencing at a point on the north line of said lot one (1), fifty-three and one-third (53⅓) rods west from the meander or government stake at the northeast corner of said lot, running thence due south sixty rods (60), thence east to the channel of Saginaw river; thence south along the channel of said river eighteen and 28-100 (18 28-100) rods, thence due west on the south line of said lot to a point fifty-seven and 58-100 (57.58) rods east of the southwest corner of said lot; thence due north seventy-eight and 28-100 (78.28) rods to the north line of said lot, thence east to the point or place of beginning, excepting the right of way of the Grand Trunk Railroad Company, containing sixteen (16) acres, more or less. Together with all and singular and tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining.

" ' In witness whereof, I have hereunto set my hand and seal the 1st day of March, A. D. 1907.        ELIZA M. HAWGOOD, [L. S.]

" ' Guardian of the Estate of John Bourn, an Imbecile.

" ' In presence of

" ' SHELDON PARK,

" ' EMMA JOHNSON.

" ' STATE OF OHIO,        } ss.:
" ' COUNTY OF CUYAHOGA.

" ' On the first day of March, A. D. one thousand nine hundred and seven, before me, a notary public in and for said county, personally came the above named Eliza M. Hawgood, guardian, known to me to be the person who executed the foregoing instrument, and acknowledged the same to be her free act and deed, as guardian, as in said instrument described.        SHELDON PARK,

" ' Notary Public, Cuyahoga Co.,

" ' State of Ohio.

" ' [Notarial Seal, Cuyahoga County, Ohio.]

" ' Commission expires———.'

"The description of the premises in the deed has been partly erased and interlined; but there was no evidence introduced in the case to show by whom or when the alteration and interlineation was made.

"Immediately following the words 'thence east' in the description, the alteration was made to read 'to the channel of the Saginaw river,' instead of the words originally 'to a point due south of the northeast corner of said lot;' and, after the words 'due south,' the words 'along the channel of said river' were inserted. This alteration and interlineation was made before the delivery of the deed to plaintiff.

"(2) Said deed from Eliza M. Hawgood, guardian of John Bourn, to plaintiff described and located land therein mentioned in range 5 east, while the petition and orders of hearing in the probate court, and the proceedings following them, describe the land as being in range 4 east. I find, however, that the defendant bought and paid for the land hereinafter described in range 5 east. The writing of the range '4' instead of '5' was a clerical error, and the land actually described in the deed was intended to be conveyed, and that the plaintiff, from the time of the delivery of said deed to him, was the equitable and legal owner of the land in said deed, intended to be conveyed, being the land hereinafter described.

"(3) The description in the aforesaid deed bounding the property by the Saginaw river is erroneous, as that would include portions of land lying in lots 6 and 7, to which grantor had no title. The Souwesconning creek is often erroneously called the Saginaw river. An order of the court was made during the progress of the trial that no land east of the Souwesconning creek was involved in the controversy.

"(4) Plaintiff entered into possession of all the lands mentioned in said instrument of transfer lying west of the center line of the channel of said Souwesconning creek immediately after receiving his deed from Eliza M. Hawgood, guardian. Some time in November, 1907, while plaintiff was enjoying peaceable possession of the land described in his aforesaid deed, and claiming title thereto up to the center line of the channel of Souwesconning creek, defendant, John J. Brechtel, crossed to the west side of the creek and set a line of posts along what he (Brechtel) conceived to be the east meandered line of said

creek, as established by the government survey and plat book, and took possession of a strip of land between the said fence posts and creek, and has occupied the same, claming it as a part of the aforesaid lots 6 and 7. That this action of said defendant was based upon the right given him by a deed hereinafter referred to from the Sage Land & Improvement Company; and, at the time he did the acts in this paragraph mentioned, he had no legal or equitable right in and to the land upon which he placed said line of fence posts, and such action was wholly without right and authority.

" (5) Lots 5 and 6 lie on the easterly side of the center line of the channel of the Souwesconning creek, and between it and the Saginaw river, and, at the time of the commencement of this suit, were owned jointly by the defendant, John J. Brechtel, and his wife, who is not a party to this suit. Their ownership is derived from a deed given by the Sage Land & Improvement Company, describing the land conveyed by lot numbers and not by metes and bounds. No part of said lots 5 and 6 projects or lies west of the center of the channel of said Souwesconning creek, and said deed did not give defendant, John J. Brechtel, any right to go upon any part of the land west of the center of said channel.

" (6) Calvin G. Thornwaite, a civil engineer and surveyor, made a survey of certain portions of section 8, town 13 north, range 5 east, in the fall of 1907, for the purpose of locating the government meandered lines of Souwesconning creek. He found the government stake at the northeast corner of the section to be seven rods from the west bank of the creek; and, taking the distances every 40 rods, he located the west meander line as being west of the creek at a varying distance of 7 to 36 rods; and at the south line of the section the meander line intersects the bank of the creek. The east meander line lies its entire length in the creek. I find that the meandered lines, as established by the government plats and field notes, do not coincide with the banks of Souwesconning creek; that the west meander line of the stream is run along the west side of the stream on dry land at distances 7 to 36 rods from the west bank of the stream at low water mark.

" (7) The owners of lots 1, 2, 3, and 4 in said section have for more than 20 years claimed title up to the center line of the channel of said Souwesconning creek; and

plaintiff's predecessors and grantors in title occupied the strip of land in dispute for more than 15 years prior to the commencement of this suit, and have occupied that portion of said lot 1 bordering on said Souwesconning creek and up to the center of the channel thereof openly and notoriously, and adversely to any other claimants, for more than 15 years prior to the commencement of this suit, and for the same period of time the east and west fences on the north boundary of the land described in the Eliza M. Hawgood deed have extended to the water's edge. Plaintiff's predecessors and grantors in said title have claimed and exercised the fishing rights on their side of the creek for more than 15 years prior to the commencement of this suit. One Baumhauer and one David Shawl have, at various times, leased fishing rights from a former owner, John Brigham. A row of spiles was formerly driven on the east side of said channel, which row of spiles were used by the Sage Land & Improvement Company which then owned lot 6 of said section 8. A row of spiles was also formerly driven on the west side of said Souwesconning creek, which were used by other parties.

"(8) Souwesconning creek has no current, and really is only an arm of the Saginaw river, but is navigable; the water being over six feet deep.

"Conclusions of Law.

"(1) The deed from Eliza M. Hawgood, guardian of John Bourn, an imbecile, to John C. Arnold, actually conveys the land intended to have been conveyed. The description of the land in the probate court proceedings to obtain a license to sell as being in range 4 east, instead of range 5 east, is a clerical error, as the land intended to be sold was that actually described in the guardian's deed. As there was a license to sell the land and a deed duly executed, the defendant cannot have such acts declared void (3 Comp. Laws, § 9165) by bringing it into question collaterally in this proceeding.

"(2) I find that defendant, John J. Brechtel, has done such acts in respect to the strip of land in dispute as to make him a necessary party defendant. The defendant's wife is a proper, but not a necessary, party.

"(3) While the meandered lines of Souwesconning creek, as shown by the government survey, do not actually coincide with the banks of the creek, yet some parts

of the stream do lie within the meandered lines, and in other portions the east meandered line lies in the stream itself.  I do not find such gross error in the government survey as to take the case out of the general rule of law that the center of the channel of the stream, and not the meandered line, is the boundary.

" (4) Furthermore, plaintiff and his predecessors in title having occupied the strip of land in dispute up to the water's edge of Souwesconning creek for 15 years and upwards, openly, notoriously, and adversely to any other claimants.  For this reason, also, I hold that plaintiff is entitled to the land up to the center of the channel of Souwesconning creek.

" (5) Defendant, Brechtel, not having any title to the land on the west side of Souwesconning creek, is a trespasser; and, plaintiff having been originally in possession of the land in dispute, the plaintiff has the better right to the land, and is entitled to judgment in the usual form in ejectment, awarding him the land described in the next paragraph.

"(6) I find that the plaintiff is entitled to a judgment against the defendant for, and is the equitable and legal owner and entitled to, the possession of the following described lands:  A piece of land in fractional section 8, town 13 north, range 5 east, bounded by a line commencing at a point on the north line of lot 1, 53⅓ rods west from the meander or government stake at the northeast corner of said lot; running thence due south 60 rods; thence east to the center or thread of Souwesconning creek; thence southerly along the center or thread of said creek; 18.28 rods, more or less, to the south line of said lot 1; thence due west on the south line of said lot to a point 57.58 rods east of the southwest corner of said lot; thence due north 78.28 rods to the north line of said lot; thence east to the point or place of beginning, excepting the right of way of the Cincinnati, Saginaw & Mackinaw Railroad Company, now known as the Grand Trunk Railway Company, containing 16 acres, more or less."

On the trial, a drawing marked Exhibit A was offered in evidence.  It is not claimed to be an official drawing, but gives a general idea of the surroundings, and for that purpose is here inserted.

Plan of Section 8, Township 13 N., Range 5 E.   Show-
ing true location of Souwesconning Creek as
Compared with Apparent Location of
Meander Lines.

DOTTED LINES ARE
MEANDER LINES.

In the original declaration filed in said cause, the land
described comprised in part a strip of land 18.28 rods in
width, extending easterly from lot 1, across lots 6 and 7,
belonging to the defendant and his wife, to the center of
the Saginaw river.   During the trial, counsel for plaintiff
stated that no claim was being made to any property in
lots 6 and 7 of section 8, and, in order that no question
might arise with reference to it, that he be allowed to
amend his declaration so that the easterly boundary of
plaintiff's claim be the center of the creek instead of the
Saginaw river.   This amendment was allowed by the
court over the objection of defendant's counsel.   The
formal amended declaration was not filed until after ren-
dering judgment; but the court had the amendment in
mind, because the judgment says:

"Said plaintiff ought to recover against said defendant the possession of the premises described in plaintiff's declaration, as amended in this cause."

The allowing of the amendment was discretionary in the court below, and we will not review it.

The title to lot 6 of section 8 is in John J. Brechtel and Amelia A. Brechtel, his wife, jointly, creating in them an estate by the entirety. It is claimed that Mrs. Brechtel is a necessary party defendant, and that the court had no jurisdiction in the case because of the absence of the wife as an indispensable party defendant. This is largely based upon the fact that the original declaration covered portions of lots 6 and 7; but, as has been stated, no claim was made to either lot 6 or 7 on the trial, and the declaration was amended to exclude them. The point at issue, and the only one controverted, was what right Brechtel as an individual, not claiming to act for any one except himself, had to trespass upon plaintiff's possession of that portion of lot 1 west of the creek. It does not appear that Mrs. Brechtel ever set up any claim to the premises either personally or through her husband. In actions of ejectment the general rule is:

" Where the premises are occupied the person in the actual occupation or possession of the premises is in all cases a necessary party, and he is the only necessary party in the absence of the statutes requiring others having an interest in the controversy to be joined, as a judgment against him binds all persons who are in privity with him. Furthermore, in the absence of statute providing otherwise, the actual occupant is the only party who may be sued in ejectment, and no other person is a proper party defendant." 15 Cyc. p. 82.

Section 10950, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 13150), with reference to suits in ejectment, provides:

"If the premises for which the action is brought are actually occupied by any person, such actual occupant shall be named a defendant in the declaration; if they are not so occupied, the action must be brought against some person exercising acts of ownership on the premises

claimed, or claiming title thereto, or some interest therein at the commencement of the suit; and all persons claiming any title to the premises adverse to that claimed by the plaintiff, may in all cases be made defendants in such action."

Under the facts in this case, the defendant, John J. Brechtel, was the only necessary party to be made defendant.

It is urged that the court erred in admitting in evidence, over several objections of defendant's counsel, the deed from Eliza M. Hawgood, guardian of John Bourn, to plaintiff, dated March 1, 1907. It is contended that the land in question is in township 13 north, range 5 east, while the petition filed, the order of hearing made, publication of such order had, testimony of freeholders under oath taken, oath administered to guardian, sale, report of sale, and order confirming such sale, all recite that the lands are situated in township 13 north, of range 4 east. The trial court found that this was a clerical error, and that the Souwesconning creek is often called the Saginaw river, and for that reason the error in the deed arose as to the description of the stream.

Under our statute, being section 9165, 3 Comp. Laws (4 How. Stat. [2d Ed.] § 11315), such a deed cannot be attacked collaterally. The section provides:

"If the validity of any sale, made by a guardian under the provisions of this chapter, shall be drawn in question by any person claiming adversely to the title of the ward, or claiming under any title that is not derived from or through the ward, the sale shall not be held void on account of any irregularity in the proceedings: Provided, it shall appear that the guardian was licensed to make the sale by the proper probate court, and that he did accordingly execute and acknowledge, in legal form, a deed for the conveyance of the premises."

It is also urged that the deed is void because of interlineations and alterations. The deed is regular on its face; and, while it can be claimed that it conveys more than was actually intended to be conveyed, the description

locates clearly the land claimed by plaintiff, and it would not result in a conveyance of the surplus. The rule is general that, when alterations are unexplained, it will be presumed that they were made before execution; and it is for the party attacking the instrument to show otherwise. In the case of *Munroe* v. *Eastman*, 31 Mich. 283, 285, Mr. Justice COOLEY, speaking for the court, said:

"The writing of a word over an erasure may or may not be suspicious. The judge who had the deed before him seems to have thought in this case it was not, and we cannot say without inspection that he has erred. The presumption commonly is, where nothing suspicious appears on the face of the deed beyond the fact that an erasure is manifest, that the alteration was made before the deed was executed. 2 Cool. Bl. Com. 308, note, and cases cited."

We have the original deed before us, and, after a careful inspection, cannot say that there is anything appearing on the face of the instrument that would give rise to the suspicion that the alterations were made subsequent to the execution of the instrument. *Brand* v. *Johnrowe*, 60 Mich. 210 (26 N. W. 883); *Brown* v. *Kennedy*, 132 Mich. 464 (93 N. W. 1073).

Error is alleged because of the alleged attempt made by plaintiff's counsel to impeach the government survey. There does not seem to be any dispute in the evidence that the meander lines of Souwesconning creek do not coincide with the actual course of the stream. The defendant insists that the description of the land and the original government survey filed in the general land office, as made by the surveyor general from the field notes, are conclusive, and the section lines and corners, as laid down in the description and plat, are binding upon the general government and upon all parties concerned.

The plaintiff relies upon the well-settled rule announced in 5 Cyc. p. 899:

"The general rule adopted by both State and Federal courts is that meander lines are not run as boundaries of

the tract surveyed, but for the purpose of defining the sinuosities of the banks of the stream or other body of water, and as a means of ascertaining the quantity of land embraced in the survey. The stream, or other body of water, and not the meander line as actually run on the ground, is the boundary," etc.

If defendant's contention is sustained, he would have the right to go beyond the creek, which is the westerly boundary of his land, and over and upon the high land upon the westerly side of the creek. Brewster, in his work on Conveyancing, § 96, said:

"Where, as is often the case, the map does not correctly represent the actual portion of land as staked out or otherwise marked on the earth, and there is a conflict between the map and the monuments on the land, the monuments will control the description. These monuments on the land are facts. Plats and maps and notes regarding them are but descriptions which serve to assist in ascertaining the facts. Parol evidence will therefore be received to show that the map as drawn does not correspond with the survey as made and marked on the ground."

In the case of *Palmer* v. *Dodd*, 64 Mich. 474, 475 (31 N. W. 209), this court said:

"The meanders have no significance as boundaries, and are not intended as such. They are run simply to afford a means of computing the area contained in the fraction which the United States requires payment for on sale of the public domain."

See, also, *Butler* v. *Railroad Co.*, 85 Mich. 246 (48 N. W. 569, 24 Am. St. Rep. 84.); *Grand Rapids Ice & Coal Co.* v. *Coal Co.*, 102 Mich. 227 (60 N. W. 681, 25 L. R. A. 815, 47 Am. St. Rep. 516)...

In the case of *Brown* v. *Parker*, 127 Mich. 390, 392 (86 N. W. 989, 990), cited by defendant, this court said:

"The meander lines of rivers and inland lakes, where the title to the bed is in the riparian owner, are of comparatively little significance, and it has frequently been said that they were not run to bound the possessions of

the riparian owner, whose title might extend beyond them."

As we are of the opinion that plaintiff's claim in lot 1 is not bounded by the meander line, but rather by the creek, it follows that he has riparian rights which extend to the middle of the stream. *Lorman* v. *Benson*, 8 Mich. 18 (77 Am. Dec. 435); *Twogood* v. *Hoyt*, 42 Mich. 609 (4 N. W. 445); *Pere Marquette Boom Co.* v. *Adams*, 44 Mich. 403 (6 N. W. 857).

There was no proof of a patent; but the rule is that it may be dispensed with where plaintiff shows conveyance through a long term of years from persons in actual, undisputed possession. *Gamble* v. *Horr*, 40 Mich. 561; *Crawford* v. *Corey*, 99 Mich. 415 (58 N. W. 332).

Plaintiff's grantors have been in possession of the land in controversy for 20 years and upwards; and the record discloses that it has been used for pasture, timber cut upon it, partly plowed, and that different persons have had cabins or shanties upon the premises. These acts of possession on the part of plaintiff's grantors, in our opinion, are sufficient to bring them under the rule above set forth.

The other assignments of error do not warrant a reversal of the case. The judgment is therefore affirmed, with costs.

STEERE, C. J., and MOORE, McALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.