AUSTIN *v.* CROWELL.

1. EJECTMENT—TENANTS AS PARTIES.
   In an action of ejectment affecting a parcel of land, part of which was located in the rear or back yards of certain tenant houses, rented and occupied by lessees of defendant, who claimed no interest in the property except as tenants of the defendant, the persons in occupancy were not necessary parties.

2. SAME—ADVERSE POSSESSION—PARTIES—LANDLORD AND TENANT.
   A defendant in ejectment cannot, for the purpose of defeating the action, rely upon the nonjoinder as defendant of any person occupying the premises with him under a claim of right subordinate to, or inseparable from, his own possession.

3. ADVERSE POSSESSION—FENCE—BOUNDARY LINES.
   Adverse possession of a strip of ground lying adjacent to plaintiff's lot was not established by testimony showing the construction of a crooked fence, claimed to be nearly on the line, and that disappeared in less than the fifteen-year period.

4. SAME—APPEAL AND ERROR—INSTRUCTIONS.
   Where the trial judge instructed the jury, in a somewhat lengthy charge, that the defense of adverse possession had not been sufficiently proved, and did not leave the question to them, but thereafter again discussed the question, while the instruction may have been somewhat misleading, the court could not say the charge was so erroneous as to require a reversal of a judgment for plaintiff.

Error to Kalamazoo; Stewart, J. Submitted April 10, 1916. (Docket No. 55.) Decided September 27, 1916.

Ejectment by Minnie Austin against Mary J. Crowell. Judgment for plaintiff. Defendant brings error. Affirmed.

*Harry C. Howard,* for appellant.

*Alfred S. Frost,* for appellee.

MOORE, J. This is ejectment brought by the plaintiff to recover possession of a strip of land eight feet in width on a city lot located near the northeast corner of Grant street and Asylum avenue (now Oakland drive), in the city of Kalamazoo. Grant street runs east and west. Oakland drive runs nearly north and south. The defendant owned three tenement houses facing on Oakland drive. She did not live in any of them. They were occupied by tenants.

In 1890 the land on Grant street was surveyed by Mr. Balch, and a plat made showing six lots fronting on Grant street. The parties to this suit trace title to the person who had this survey made. When he sold the land, instead of selling it as lots shown by the plat, his deeds described the lands by metes and bounds, and the record seems to indicate that he conveyed two feet of land fronting on Grant street more than there was. The plaintiff owned one of the lots fronting on Grant street. The defendant at the time this suit was brought was the owner of the northerly portion of the lot which was bounded on the west by Asylum avenue (now Oakland drive) and on the south by Grant street. Her lots fronted on Oakland drive and ran back so that the rear of them abutted against the west side lines of the rear portion of the plaintiff's lot.

In 1904, shortly after plaintiff obtained title to her lot, she caused a survey to be made of the lots conveyed by the common grantor. This survey showed that the lines were not where, up to that time, it was supposed they were located. The record indicates that all the parties affected by the survey except the defendant accepted it. It is the claim of plaintiff that until shortly before this suit was brought no one

disputed the accuracy of the survey. Two surveys by other surveyors were subsequently made which agreed substantially with the survey of 1904.

July 4, 1911, plaintiff built a fence on the line between the rear of her lot and the rear of the lots of the defendant as shown by the survey of 1904, which line she claims is the true line. July 12, 1911, the defendant, assisted by her daughter removed this fence, claiming it had been placed on her land. The land involved is eight feet one way and about eighty feet the other way. This suit in ejectment was brought August 22, 1911. On September 7, 1911, the defendant pleaded the general issue. The case was tried before a jury. From a verdict and judgment in favor of the plaintiff the case is brought here by writ of error. Reversal of this judgment is sought for four reasons:

(1) The actual occupants of the premises described in the plaintiff's declaration were not made parties defendant.

(2) Because the boundary lines included within the lines occupied by the defendant and her tenants were boundary lines established by long practical acquiescence of plaintiff's predecessors in title.

(3) Because the defendant and her tenants had occupied the property without dispute from 1890 to 1911, and had acquired title thereto by adverse possession.

(4) The court's charge.

We will consider these reasons in the above order.

1. The defendant had three houses on her lots, each of which was occupied by a tenant each of whom used the yard back of the house. Immediately and for some years previous to the erection of the fence by the plaintiff there was no fence between. Counsel for defendant insist that each of the tenants should have been made a party defendant, citing sections 13150, 13159, 5 How. Stat. (2d Ed.), 3 Comp. Laws 1915,

§§ 13171, 13180, and *Lockwood* v. *Drake,* 1 Mich. 14;
*Crane* v. *Seitz,* 30 Mich. 453; *Hoyt* v. *Southard,* 58
Mich. 432 (25 N. W. 385); *Haddy* v. *Tobias,* 85 Mich.
326 (48 N. W. 499); *Farrand* v. *Kavanaugh,* 132
Mich. 436 (93 N. W. 1083). A reference to this stat-
ute and the cases cited will show they are not con-
trolling. In the instant case the defendant pleaded
the general issue. She testified that no one but her-
self had an interest in the disputed strip. None of
the tenants were claiming any interest except what
came to them as tenants of defendant. No one of
them is complaining that he or she was not made a
party. This ejectment proceeding does not affect the
occupants of defendant's houses or of the yard that
properly goes with them.

In *Bunce* v. *Bidwell,* 43 Mich. 542 (5 N. W. 1023),
Justice COOLEY speaking for the court, it was held the
wife was not a necessary party where the land in
dispute was a strip of land adjoining the 40 acres
where they lived. In *Hendricks* v. *Rasson,* 49 Mich.
83 (13 N. W. 367), it was held the defendant in eject-
ment cannot for the purpose of defeating the action
rely upon the nonjoinder as defendant of any person
occupying the premises with him under a claim of
right that is subordinate to and inseparable from his
own possession. See, also, *Arnold* v. *Brechtel,* 174
Mich. 147 (140 N. W. 610). Upon this record the
case should not fail because the tenants were not made
defendants.

2. We now come to the question of the boundary
lines which it is claimed were established by acqui-
escence. The judge gave the following request:

"In an ejectment suit the plaintiff must rely upon
the sufficiency of her own title, and cannot question
defendant's title before making a *prima facie* case of
actionable right in herself, and the plaintiff must re-
cover on the strength of her own title where the de-

fendant is in possession, and in applying this law you are to consider and determine from the evidence in the case whether or not the plaintiff has established her right to recover, and to that end you should consider not only the evidence offered by the plaintiff, but the evidence offered by the defendant as well. If you should find that the only question in dispute was where the west line of the Brown land was located, then you should determine from all the evidence in the case where that line actually is, and if you find as contended for by defendant, then your verdict should be in favor of the defendant, no cause of action."

In his general charge he stated:

"If you should find that this land had been surveyed by Balch and Mershon in 1890, and that thereafter Mershon had sold for the E. B. Crowell lots along Grant street and pointed out to the purchasers' the location of the premises, and the purchasers went into possession thereof upon the agreed and established boundaries as pointed out by Mershon, and they and their grantees so continued to occupy said lots up to the time that the plaintiff acquired title to her property on Austin street, and that she caused a new survey to be made according to the descriptions contained in the deeds, and induced people owning lands upon Grant street to change their old lines of occupation as established by them and Mr. Mershon, I charge you that in law it was not possible for the plaintiff to make the lot owners on Grant street or this defendant give up the established and agreed marks and accept another, even though you should find that the several surveys made under the direction of Mrs. Austin were in exact accord with the descriptions contained in the deeds of the respective owners, because the law wisely says that, where a line is established by consent, it shall not again be changed except by consent, and the fact that the lot owners on Grant street may have consented to change their lines to meet the terms of Mrs. Austin's survey would not compel this defendant to accept that survey."

It is true the judge said a good deal more upon this

subject, but he put the disputed question squarely before the jury, which decided in favor of the plaintiff.

2 and 3 may be considered together.

Severe criticism is made of the charge, particularly of that part reading:

"(1) I say to you in the beginning, gentlemen of the jury, as a proposition of law, that there is no adverse possession here, steady and undisputed for 15 years. That the court charges you as a matter of law is out of the case. And it must be determined by the deed, and what has taken place since. * * *

"The defendant contends that she and her grantors have been in exclusive, open, and adverse possession of this land for the full period of 15 years prior to the commencement of this suit, and if you find this to be a fact, it would make no difference what the surveys might show, for the reason that under the law, after the lapse of 15 years of adverse possession, peaceable, open, and notorious, the occupant of the land cannot be disturbed, and in figuring the 15 years you figure not only the number of years that the defendant herself has occupied it, but also the number of years that those owning the land prior to her ownership occupied it, and should you find that she had been in possession of it for full 15 years, then your verdict must be in her favor, no cause of action. But you must find that the possession was peaceable, open, notorious, and adverse. As the court before said, the question of adverse possession cannot enter under the testimony in this case before you.

"The fourteenth is given as modified: If you find that the defendant and her grantors had been in peaceable, open, and notorious possession of the land described in the plaintiff's declaration for the period of 15 years before the plaintiff commenced her suit, your verdict should be for the defendant, no cause of action. The court again says that the question of adverse possession cannot enter into this case"

—and similar language.

The charge is very long. It indicates an attempt to cover every phase of the case presented by counsel. The language quoted was not well calculated to be

helpful to the jury. An examination of the record, however, convinces us that defendant did not give testimony of facts which, if believed, constituted adverse possession. It is true that there is testimony that her husband built a fence which she says was on the line to inclose pasture for the horse and cow. The evidence is that the fence was very crooked and disappeared after a time much less than 15 years.

There was testimony about one of the tenants having a garden. It was in dispute as to where it was put. It was maintained but a year or two. There was testimony that in the season of 1911 one of the tenants mowed a portion of the disputed strip which was in lawn, but, giving all this testimony the most favorable construction possible in favor of defendant, it fails to show continued visible and adverse possession for a sufficient length of time to ripen into a title. It would have been well for the court, after he stated the defense of adverse possession was not open to defendant, to have dropped the subject, but we do not think what he said was reversible error.

Judgment is affirmed, with costs.

STONE, C. J., and KUHN, OSTRANDER, BIRD, STEERE, BROOKE, and PERSON, JJ., concurred.